EXXON CORPORATION, Intercontinental Terminals Company, and Rescar, Inc., Relators

v.

The Honorable Larry STARR, Judge, 188th Judicial District Court, Gregg County, Texas, and the Honorable Alvin G. Khoury, Judge, 124th Judicial District Court, Gregg County, Texas, Respondents.

No. 12-90-00150-CV.

Court of Appeals of Texas, Tyler

June 18, 1990.

John M. Smith, Longview, Frank B. Davis, A. Thomas Kajander, Houston, for relators.

G.R. Akin, Longview, Paul M. Boyd, Tyler, for respondents.

PER CURIAM.

This original mandamus proceeding arises out of a personal injury action in which the relators are the defendants. Steven Lafollett is the plaintiff below and real party in interest here. State Farm Fire and Casualty Company, an intervenor below, is also a real party in interest. Respondent Judge Khoury is the presiding judge of the court in which the underlying action is pending. Respondent Judge Starr was sitting when one of the orders complained of in this mandamus action was entered.

LaFollett filed his original petition on February 18, 1988, alleging that as a result of an explosion caused by the negligence of relators he suffered injuries and damages. LaFollett's claim is that while he was working at an unrelated business, the explosion occurred on December 30, 1987, which caused him to fall. As a result of that fall, LaFollett contends that he has suffered physical and mental injury which has required institutionalization. Discovery has revealed that LaFollett has been seen by some forty-two medical doctors, psychologists, dentists, osteopaths and chiropractors since the alleged injury.

In January, 1990, LaFollett's medical records were turned over to the relators. According to the parties, the records comprise approximately 1,300 pages of information. In February, relators began taking depositions in the case. Sometime in March, the parties agreed to have LaFollett submit to a medical examination by relators' doctors in Houston. The examination was scheduled to take place on April 16–18, 1990. Relators agreed to pay all expenses for the examination. The examining doctor was to provide a report to LaFollett's attorney by April 23 and be available for deposition on April 26. On the afternoon of Friday, April 6, 1990, LaFollett's attorney informed relators that LaFollett's doctor had determined that LaFollett should not undergo the examination, that the doctor had decided such an examination would cause "decompensation" (heart failure).

On April 10, 1990, relators filed a motion for a medical examination pursuant to TEX. R.CIV.P. 167a. It was, and still is, their position that they need the examination to meet LaFollett's case because it is his contention that as a result of the alleged injury he will need care for the rest of his life at an expense of some $100,000.00 a year. Relators contend that good cause exists for the examination because LaFollett has stated his intent to use expert medical and

psychological testimony to prove his case and that further examination is necessary to throw light on perceived problems with the treatment and testing that has been provided.

On April 12, 1990, a hearing was held before Judge Starr sitting in the 124th District Court. LaFollett argued that his doctors concluded that it was unsafe for him to travel to Houston and further that relators sought only re-runs of several of the tests that had already been completed. From the argument of counsel it became apparent that one test, sought by relators, an MRI,[1] had never been done. Although no written order was entered on that date, Judge Starr indicated that relators could have LaFollett examined by one doctor in Dallas[2] and an MRI performed.

On April 20, a second hearing was held before Judge Starr to determine whether more time would be allowed for the designation of experts to testify at trial. Relators stated that a separate doctor was needed to perform and interpret the MRI and that person, who had not yet been identified, would need to be designated in supplemental answers to interrogatories. At the end of that hearing, Judge Starr indicated that he would allow relators to designate the examining doctor as well as the doctor who performs the MRI.

On May 4, 1990, Judge Starr signed an order directing LaFollett to appear for a physical examination before relators' doctor, Alan Levinstone, a neurologist who practices in Dallas, and who, in turn, would select a doctor to conduct an MRI. The order states:

(c) Even if Dr. Alan Levingstone [sic] believes it is necessary from a medical viewpoint to perform any other diagnostic tests or consult with any doctor other than the doctor who performs such magnetic resonance image test, he shall not have the right to do so.

(d) The Plaintiff is required to undergo a physical examination from the two persons referred to hereinabove and no other persons.

(e) The Court finds that the Plaintiff should not be required to undergo a physical examination from a psychiatrist or a psychologist or any other doctor other than the two doctors mentioned hereinabove even though the Plaintiff has been examined by several psychiatrists and psychologists, all of whom have been designated as testifying experts by the Plaintiffs.

On May 1, 1990, relators filed a motion to compel the production of all of "State Farm's records pertaining to Mr. LaFollett's medical condition." They also sought "[a]ll correspondence [of] Plaintiffs' attorneys and other parties such as doctors, health care providers, State Farm, or other insurance companies pertaining to Mr. LaFollett's medical condition." State Farm intervened in the suit on June 6, 1988 to recover medical expenses they had paid for LaFollett's treatment. On approximately May 11, 1990, relators cross-claimed against State Farm alleging negligence in the treatment provided to LaFollett on State Farm's recommendation.

On May 1, 1990, relators filed a motion for additional medical examinations. Relators sought thereby to obtain an order directing LaFollett to submit to a mental examination. Dr. Levinstone, who had conducted the court-ordered physical examination, reported that he found no evidence of physical injury, and therefore required consultations from psychiatrists and psychologists because he is not certified in those areas.

On May 14, 1990, Judge Khoury held a hearing on the pending motions. In response to the motion to compel, State Farm asserted that the documents that had not been voluntarily produced were privileged as work product and tendered the file to the court for an *in camera* inspection. Relator Rescar's attorney then told the court, "We don't want you to wade through this." After a lengthy exchange between the court and counsel to determine exactly what it was that relators wanted that had

---

1. A magnetic resonance image test.

2. LaFollett was residing in a half way house in Dallas.

not already been produced, Rescar said it wanted State Farm's daily logs. Judge Khoury orally denied the motion to compel production of those documents.

On their motion for additional medical examination, relators argue that since La-Follett has been examined by numerous psychiatrists and psychologists, in consultation with neurologists, they are entitled to obtain court ordered examinations by the same type of specialists to defend the case. Relators also argue that the raw data, and some of the tests relied upon by LaFollett and his doctors, were questionable. LaFollett's response is to the effect that relators are seeking to delay the trial, noting that although the case has been on file for some two years, relators began discovery in the last several months. LaFollett further replied that even relators' doctor had said that it would be difficult to accurately examine LaFollett psychologically because he was over-medicated. By written order signed on May 15, 1990, Judge Khoury overruled the motion for additional medical examination.

On May 16, 1990, relators filed this mandamus action seeking to compel the trial judge to set aside his order denying an additional medical examination, and to enter an order requiring LaFollett to submit to a mental examination, and compelling State Farm to produce its daily activity logs as requested in relators' motion.

This court granted relators' request for temporary relief and stayed the May 21 trial setting. The matter was heard on June 5, 1990. We will grant the petition in part and deny it in part.

## STATE FARM ACTIVITY LOGS

■ At the time this mandamus action was filed, State Farm, asserting a privilege, had tendered the documents in question to the trial court for an *in camera* inspection. But relators had expressly told the trial court that they did not want the court to "wade" through the documents. Relators then asked this court to order the documents produced, complaining, among other things, that Judge Khoury had abused his discretion by not conducting an *in camera* inspection of the documents.

On May 24, 1990, subsequent to the filing of this mandamus action, Judge Khoury conducted an *in camera* inspection of the documents in question. On that same date, Judge Khoury signed an order wherein he found, after reviewing the documents and State Farm's affidavit evidence, that "material not heretofore produced relates to State Farm Fire and Casualty Company's efforts in this third party action and is privileged."

On the day of argument, relators sought to have the documents in question forwarded to this court for review. We are of the opinion that relators' petition in this case does not cover such a request. The question presented at the time of argument does not include the question of whether the trial court's determination of privilege *after* the *in camera* inspection constituted an abuse of discretion. For this reason, we deny relator's motion insofar as it requests relief from the trial court's order, entered on May 14, 1990, overruling the motion to compel, because that question is moot.

## MOTION FOR ADDITIONAL MEDICAL EXAMINATION

Relators seek psychiatric and psychological examinations of LaFollett pursuant to TEX.R.CIV.P. 167a. They contend that the trial court abused its discretion in denying their request for an order directing LaFollett to submit to such examinations.

■ We begin by disposing of relators' claim that they are entitled to an examination of LaFollett by a psychologist. This claim is without merit. The Texas Supreme Court expressly rejected such a claim in *Coates v. Whittington,* 758 S.W.2d 749, 751 (Tex.1988) holding that a psychologist is not a "physician" within the meaning of Rule 167a.[3] *See also Landry v. Green Bay & Western R.R. Co.,* 121 F.R.D. 400, 401 (E.D.Wis.1988); *Comastro v. Tourtelet,* 118 F.R.D. 442, 443 (N.D.Ill.

---

3. Relators' attempts to somehow bring themselves within the ambit of the amended version of Rule 167a, which becomes effective on **September 1, 1990,** cannot be sustained. The very fact that the new rule is not effective at this time precludes the relief they seek.

1987). That part of relators' petition for a writ of mandamus to compel the respondents to order a compulsory examination by a psychologist is denied.

The request for mandamus relief to compel an examination by a psychiatrist involves other issues. In order to obtain an order that a party undergo a compulsory psychiatric examination under Rule 167a, the movant must show (1) the party's mental condition is "in controversy"; and (2) there is good cause for a compulsory mental examination. *Coates*, 758 S.W.2d at 751; Tex.R.Civ.P. 167a.

█ This case, unlike *Coates*, does not involve allegations of simple mental anguish or emotional distress. Despite LaFollett's assertions to the contrary, his claims as elucidated by discovery include allegations of severe mental injury. His past treatment has included extensive psychiatric and psychological evaluation and treatment. His claim for damages is supported by a "Life Care Plan" prepared by a psychologist, which projects continued psychiatric, psychological and neuropsychological treatment. He has indicated, in response to discovery request, that his evidence at trial will include testimony of psychiatric and psychological experts. LaFollett's mental condition is clearly in controversy in this case.

█ To obtain a compulsory mental examination, relators must also have shown "good cause". To satisfy this requirement, relators must show three elements. *Coates*, 758 S.W.2d at 753. These elements are (1) that an examination is relevant to issues that are genuinely at issue in the case; (2) that there is a reasonable nexus between the condition in controversy and the examination sought; and (3) that it is not possible to obtain the information sought through some other, less intrusive, means. *Id.* The Supreme Court has said that "[i]f ... a plaintiff intends to use expert medical testimony to prove his or her mental condition, that condition is placed in controversy and the defendant

would have good cause for an examination under Rule 167a." *Id.*

In a case remarkably similar to that before us, the First Court of Appeals found that denial of a request for a compulsory psychiatric examination of the plaintiff was such an abuse of discretion as to require granting mandamus relief.[4] In *Sherwood Lane Associates v. O'Neill*, 782 S.W.2d 942 (Tex.App.—Houston [1st Dist.] 1990) (orig. proceeding), the minor plaintiff had been treated by two psychologists and admitted to a psychiatric hospital. The plaintiff had designated the psychologists as expert witnesses. The records of one psychologist were provided to the defendants who had a psychiatrist review them. The trial court denied the defendants' motion for a psychiatric examination by a psychiatrist of their choice. The defendants sought reconsideration and the trial court again denied the examination.

In deciding the trial court abused its discretion and that mandamus was proper in *Sherwood Lane*, the 1st Court said:

> The facts and circumstances compel a decision contrary to the one reached by respondent [trial judge]. The minor has already been examined by her expert witnesses. Unless relators are allowed the requested relief, their expert's analysis will be limited to a review of the minor's records and the testimony of the minor's psychologists. Relators' expert would be precluded from examining matters not covered by the minor's psychologists' examinations and would be precluded from making his own observations. The trial court's action severely restricts relators' opportunity to discover facts that may contradict the opinions of the minor's expert witnesses. In turn, such restriction severely limits relators' ability to contest the minor's claim for mental injury damages.
>
> The ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed. Fundamental

4. LaFollett attempts to distinguish the case, saying that the primary injuries in the case before the 14th Court were mental trauma. We do not

believe that the case, as reported, supports that interpretation.

fairness dictates that relators' psychiatrist be allowed to examine the minor; otherwise, relators will be at a severe disadvantage in the "battle of experts."

*Id.* at 945 (citations omitted).

We agree with the First Court of Appeals. In this case, the facts and circumstances compel the decision that relators are entitled to have LaFollett examined by a psychiatrist of their own choosing. To deny such a psychiatric examination presents precisely the dangers outlined by the First Court; in effect it would be to deny them a fair trial.

The petition for a writ of mandamus is in part conditionally granted. It will issue only if respondent Judge Khoury fails to vacate his previous order to the extent it denies relators a mental examination of Steven LaFollett by a psychiatrist and fails to enter an order granting relators such an examination to be conducted by one psychiatrist in Dallas, Texas. In all other respects the petition for a writ of mandamus is denied.