**William J. AMIS, Jr., Relator,**

v.

**The Honorable Glen ASHWORTH, Respondent.**

**No. 12–90–00201–CV.**

Court of Appeals of Texas, Tyler.

Dec. 31, 1990.

J.W. Tyner, Tyler, David Stagner, Sherman, Keith Dollahite, Tyler, for appellant.

Jack Skeen, Tyler, Richard Berger, Dallas, Jack Flock, Tyler, Ted Lyon, Jr., Mesquite, for appellee.

RAMEY, Chief Justice.

This original mandamus proceeding arises out of an action below between the Relator, William J. Amis, Jr. (hereinafter "Amis"), and David H. Brown and Barbara Brown (hereinafter "Brown"), the real parties in interest here. Respondent was appointed to sit in this case after the judge of the 7th Judicial District Court, the trial court in which the underlying action is pending, recused himself. Before this Court are Respondent's orders directing Amis to permit Brown access to premises under Amis' control and to submit to a medical examination.

Mandamus is an extraordinary remedy and the writ will not issue unless there has been a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy at law. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). A trial court abuses its discretion when it makes a decision that is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law," and the relator must show that the law and the facts in the matter permitted the trial court to make but one decision. *Id.*

The incident underlying the action below, an altercation between Amis and Brown, occurred in October, 1988. Amis filed his original action based upon that incident on November 4, 1988. Brown filed his original petition based upon that same incident on December 22, 1988. The trial was set for July 20, 1990. On June 25, 1990, Brown filed a motion for "temporary occu-pation of premises for re-enactment." At approximately the same time, Brown moved the court to order Amis to submit to a medical examination by Brown's physician. The motions were heard on July 5, 1990. On July 5, 1990, Amis filed a motion for protective order relating to the motion for occupation of premises. At the hearing no evidence was offered.

## ORDER FOR OCCUPATION OF PREMISES

The alleged altercation between Amis and David Brown took place at the home of Amis' father.[1] Brown was allegedly shot by Amis during the altercation and claims permanent injuries as a result. As grounds for occupation of the home at which the alleged altercation occurred Brown asserted:

A major issue in this cause is the sequence of events attendant to the altercation between [Brown and Amis] at the present time [Brown] is a quadriplegic. He has difficulty breathing. He is under the effect [sic] of pain and elevation drugs which affect his memory and capability to perform. He has severe bouts of depression and is still psychologically influenced by the stresses involving this case.... This was the place of the occurrence in question.... Before [Brown] can be prepared to present his cause of action before the Court, is [sic] necessary for a re-enactment to be sponsored by him at the time of trial.

At the hearing on the motion, Brown argued:

All we have today is photographs of bullet holes in walls provided by the peace officers in this case to everybody. We need to be out there on the scene to see just how all of this lines up as far as discovery. I think there's a discovery reason to be there. There's a reason to be there to perform a video, which would be demonstrative to the jury.

1. By subsequent amended petitions, Amis alleged numerous additional causes of action not necessarily arising out of the October 1988 incident. The trial court severed all causes of action except for those alleging assault and battery arising out of the October 1988 incident. The other causes of action are to be tried at some other time in a separate proceeding. The cause underlying this original proceeding is now identified as Trial Court Cause No. 88–2271–A(a).

Brown's attorney told the Respondent that to "perform a video" would require a film crew, actors and witnesses, totalling about twenty people, and that the performance and filming would take "six hours at the outside ... depending on how many times you have to reshoot. They need to get in and set up and get the lighting." Subsequently, counsel told the Respondent that it would take eight hours instead of six.

■ The core issue is whether the order the Browns seek is *discovery.* The term "discovery" suggests the existence of the information being sought. The various rules governing the discovery process in Texas show that the process is intended for the gathering of relevant information within the control or knowledge of others.[2] There is nothing in the rules that suggests that the "discovery" process is intended to provide for the "creation" of new evidence for the purpose of trial presentation.

■ TEX.R.CIV.P. 166b(2)(c) and 167[3] govern entry on land for discovery purposes. Rule 166b(2)(c) provides:

A party may obtain a right of entry upon designated land or other property in the possession or control of a person upon whom a request or motion to produce is served when the designated land or other property is relevant to the subject matter in the action *for the purpose of inspection and measuring, surveying, photographing, testing or sampling the property* or any *designated object or operation thereon.* (Emphasis ours.)

Thus, the purposes for which a person is permitted compulsory entry onto the property of an adversary are limited. Those purposes are clearly for securing information.

In this case, the key discovery activity in the rule is "photographing." It is the only one under the rule that remotely relates to Brown's stated purpose of entering Amis' property to videotape a reenactment of Brown's version of the occurrence. We believe that the dramatic creation of a videotape is beyond the scope of Rule 166b. A fair reading of the rule shows that it limits photographing to recording the existing conditions on the property. Brown's stated purpose is not so limited. It is to videotape a staged performance by professional actors while simply photographing the property as a backdrop for the performance.

We are unwilling to extend the authority granted under Rule 166b for entry onto land for the rule's enumerated discovery purposes to entry onto the property of another for the purpose of the creation of a video. To do so would be to compel a property owner to relinquish his property for the creation of evidence designed and staged to portray his opponent's version of the occurrence in its most favorable light.

The cases cited to us by Brown, do not address the issue of entry onto land for discovery purposes. The three federal decisions cited in the pre-submission brief, *Roberts v. Homelite Div. of Textron, Inc.,* 109 F.R.D. 664 (N.D.Ind.1986); *Kiraly v. Berkel, Inc.,* 122 F.R.D. 186 (E.D.Pa.1988); and *Carson v. Burlington Northern, Inc.,* 52 F.R.D. 492 (D.Del.1971), deal with re-enactments sought under FED.R.CIV.P. 30 which governs depositions. In none of the three cases was access to the premises an issue. A case relied upon heavily by Brown at oral argument, *Clark v. St. Thomas Hospital,* 676 S.W.2d 347 (Tenn. Ct.App.1984), deals not with entry on premises in discovery to make a re-enactment of the occurrence, but with the *admissibility* of such a re-enactment into evidence at

---

**2.** *See, e.g.,* TEX R.CIV.P. 166b(2)(a) ("It is not ground for objection that the information sought will be inadmissible at the trial if the information sought...."); 166b(2)(b) ("A party may obtain discovery of the existence, description, nature, custody, location and contents of any and all documents ... and tangible things...."); 166b(2)(d) ("A party may obtain discovery of the identity and location ... of any potential party and of persons having knowledge of relevant facts."); 166b(2)(f) ("A party

may obtain discovery of ... the existence and contents of any insurance agreement ... [and] the existence and contents of any settlement agreement...."); 166b(2)(g) ("Any person ... shall be entitled to obtain ... his own statement ... which is in the possession, custody, or control of any party."). (Emphasis ours.)

**3.** All references to "rules" are to TEX.R.CIV.P. unless otherwise indicated.

trial. The four other cases cited in Brown's post-submission brief [4] also address the question of the admissibility of video re-enactments of incidents, not the compulsory admittance of one party onto property of another party to make such evidence. Whether or not a video re-enactment is admissible into evidence is an entirely different question from whether the rules authorize a trial court to order one in control of land to permit another exclusive occupation of those premises for the purpose of making the video re-enactment. We are not presented with, and do not voice any opinion as to, the admissibility of a video re-enactment in this case.

We should not be understood to say that Brown would be prohibited from entry onto Amis' property for the purpose of photographing existing conditions of the property as well as the other discovery authorized by the rules. Furthermore, Brown is not prohibited from recreating, at a site other than his opponent's, the physical conditions on Amis' property as developed by discovery for the purpose of his re-enactment.

Respondent Judge Ashworth simply did not have authority to grant Brown's motion for occupation of the Amis property for the purpose of filming a video of Brown's version of the event. To the extent it permits entry for that ·purpose, the order is contrary to our Rules of Civil Procedure and the purposes thereof. Therefore, the order that Amis permit Brown to occupy the subject property was beyond Judge Ashworth's authority and constituted an abuse of discretion.

## ORDER FOR PSYCHIATRIC EXAMINATION

■ The second order that is the subject of this mandamus action directs Amis to submit to a mental examination by a psychiatrist designated by Brown. Amis contends that Brown failed to make the showing required for such an order and that the order does not meet the standards of Rule 167a which governs such court ordered examinations.

Rule 167a [5] provides:

When the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician.... The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

The Supreme Court has addressed the rule and its requirements in the context of a compulsory mental examination in *Coates v. Whittington,* 758 S.W.2d 749 (Tex.1988). Specifically, the Court held that "Rule 167a was not intended to authorize sweeping probes into a plaintiff's psychological past simply because the plaintiff has been injured and seeks damages for mental anguish as a result of the injury." *Id.* at 752. "To fall within the Rule the plaintiff must assert a mental injury that exceeds the common emotional reaction to an injury or loss." *Id.* at 753. Initially then, it is the movant's burden to show that the other party's mental condition is *in controversy. Walsh v. Ferguson,* 712 S.W.2d 885, 887 (Tex.App.—Austin 1986) (orig. proceeding).

The second requirement of Rule 167a(a) is that there be good cause for ordering the examination. To meet the good cause prerequisite, the movant must show:

(1) that an examination is relevant to issues that are genuinely at issue in the case; (2) that there is a reasonable nexus between the condition in controversy and the examination sought; and (3) that it is not possible to obtain the information sought through some other, less intrusive, means.

**4.** *Jones v. Lingenfelder,* 537 So.2d 1275 (La.Ct. App.1989); *Burk v. Ill. Central Gulf R.R. Co.,* 529 So.2d 515 (La.Ct.App.1988); *Jenkins v. Snohomish County Public Utility Dist. No. 1,* 713 P.2d 79 (Wash.1986); *DiRosario v. Havens,* 196 Cal. App.3d 1224, 242 Cal.Rptr. 423 (1987).

**5.** Rule 167a, as in effect at the time of the motion and order in this case, has been amended effective September 1, 1990. The 1990 amendment does not change the resolution of the issues presented in this mandamus action.

*Exxon Corp. v. Starr,* 790 S.W.2d 883, 887 No. 12–90–00150–CV slip op. at 9, (Tex. App.—Tyler, 1990); *Coates v. Whittington,* 758 S.W.2d at 753.

Although generally a movant for a compulsory physical or mental examination must affirmatively show that the "in controversy" and "good cause" elements exist, the Supreme Court has said that "[i]f, however, a [party] intends to use expert medical testimony to prove his or her alleged mental condition, that condition is placed in controversy and the [other party] would have good cause for an examination under Rule 167a." *Coates,* 758 S.W.2d at 753.

The motion for a psychiatric examination in this case alleges that Amis has identified mental health professionals as having knowledge of relevant facts and has indicated that he will offer testimony from those persons. Attached to the motion were two pages of hand written notes with no signature or other identifying marks. Apparently, Brown was representing the notes to be those of Donald Walker, Ph.D.

No affidavit was attached to the motion itself or to the notes. The motion identified a James Grigson, M.D., as the person by whom Brown wished to have Amis "evaluated," but Grigson's field of medicine or specialty was not mentioned. Neither the motion nor the order specifies the "manner, conditions, [or] the scope of the examination."

At the hearing on the motions, Brown's attorney stated that Amis had indicated that he intended to use the testimony of Walker in support of Amis' claim of self-defense. Amis' response was that he intended to use Walker, a psychologist, and other witnesses to show Amis' *state of mind,* not any mental disease or injury arising from the altercation. No evidence was offered or received at the hearing.

We are thus faced with the question of whether, on the record before him, the Respondent was authorized to order Amis to submit to an examination by Dr. Grig-

son. For three reasons we find that the order is void.

First, Amis' "mental condition" is not in controversy. Brown contends that Amis does not contest the "in controversy" prong. We do not agree. Amis urges that it is his "state of mind" at the time of the shooting that is in dispute, not his mental condition. Amis' theory of the case is that he used force against Brown only in self-defense and in the defense of his father. The privilege of self-defense is available when a person reasonably believes that he is in immediate danger.[6] *See* TEX.PENAL CODE ANN. § 9.31(a) (Vernon 1974). "A person has a right to defend from apparent danger to the same extent as he would have had the danger been real, provided he acted upon a reasonable apprehension of danger as it appeared to him at the time." *Dyson v. State,* 672 S.W.2d 460, 463 (Tex. Cr.App.1984). The focus is on the actor and whether from his viewpoint at the time his apprehension of danger was reasonable. *Id.; Reed v. State,* 703 S.W.2d 380, 384 (Tex.App.—Dallas 1986, pet. ref'd). Thus, the general issue is whether Amis' belief that he was threatened with danger was reasonable from Amis' viewpoint. It is the circumstances as he perceives them at the time of the altercation that are relevant.

The pivotal point here is that the case involves Amis' state of mind at the time of the altercation, not some condition, disease or defect existing in his mind. "State of mind" at the time of the occurrence and "mental condition," as that phrase is used by Rule 167a, are not synonymous in this case. The question presented by Amis' defense against Brown's counterclaim is whether Amis' response was reasonable under the stimuli affecting him at the time. As in *Coates,* it is the reasonableness of Amis' conduct, not an underlying mental condition that is in issue.

Our review of the pleadings and argument in this case demonstrates that Amis is not claiming that a mental condition justified his conduct. Even if the notes at-

6. The privilege of self-defense in Texas is the same in criminal and civil assault cases. *Fambrough v. Wagley,* 140 Tex. 577, 169 S.W.2d 478, 479 (1943); *Holmes v. Holmes,* 588 S.W.2d 674, 675 (Tex.Civ.App.—Beaumont 1979, no writ).

tached to Brown's motion were properly identified or were proper evidence, the language quoted therefrom by Brown in his response to this mandamus does not allege Amis suffered from any mental or emotional defect. The observations quoted by Brown are factual observations by the author of the notes. Amis' "mental condition" was not shown to be *in controversy* within the meaning of Rule 167a so as to authorize a compulsory medical examination. Thus Respondent was not authorized to order Amis to submit to any examination.

 The second fatal problem with the order for a psychiatric examination is that no evidence was adduced at the hearing. The party moving for a compulsory examination bears the burden of proving that the opponent's mental condition is in controversy and that good cause exists for ordering the examination. Only the two pages of notes which were attached to this motion for a psychiatric examination bear the appearance of evidence. The language in these unsigned notes of the psychologist Walker, highlighted by Brown in his response to this mandamus petition, is merely a list of actions tending to show the reasonableness of Amis' conduct. There is no evidence of a defect in Amis' mental processes. There is no evidence of the substance of Walker's testimony, if allowed to testify. There is no suggestion of his professional opinion of Amis' mental condition, nor even evidence that any psychological testing of Amis was ever performed by Walker. The total lack of proof is fatal to the order.

Finally, the order itself is fatally deficient under Rule 167a because it does not define the conditions and scope of the ordered examination. The rule mandates that the order "specify the ... manner, conditions, and scope of the examination." As mentioned, if some aspect of Amis' mental condition were in issue, which we do not find, it would nevertheless not support an uncircumscribed psychiatric examination; in this order there was no attempt to limit the scope of Dr. Grigson's examination as the rule requires.

The order compelling Amis to submit to a compulsory examination by Dr. Grigson constitutes an abuse of discretion for each of the above described reasons. First, it has no basis in the law because Amis' mental condition is not "in controversy" as required before such an examination may be ordered. Second, it is unsupported by any evidence. Third, it fails to define the scope and conditions of the proposed examination as required by the rule.

## CONCLUSION

Having found that the Respondent abused his discretion in ordering the entry on the premises to make a video re-enactment and in ordering Amis to undergo the compulsory medical examination, we conclude that the writ of mandamus should issue. However we are confident that Judge Ashworth will comply with our decision in this matter. Therefore, the writ shall issue only if Judge Ashworth fails to vacate both orders forthwith.