Joe Harold WILLIAMS, Sr., Relator,

v.

Honorable Gary SANDERSON, Judge
of the 60th Judicial District
Court, Respondent.

No. 09–95–091 CV.

Court of Appeals of Texas,
Beaumont.

Aug. 17, 1995.

Joe Michael Dodson, Pate & Dodson, Beaumont, for appellant.

John W. Newton, III, Orgain, Bell & Tucker, Beaumont, David A. Brandom, Provost & Umphrey, Beaumont, Thomas O. Moses, Lindsay, Moses & Barkley, Beaumont, William T. Wells, Law Office of Paul Wesley Klinger, Jr., Baytown, for real party in interest.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

In this mandamus proceeding, Relator Joe Harold Williams, Sr. contends that the trial court abused its discretion by entering a November 7, 1994, order requiring him to submit to an eye examination. On March 23, 1995, Relator Williams filed a motion for leave to file petition for writ of mandamus. On April 6, 1995, this Court entered an order granting Relator's motion to file petition and set a date for argument by the parties on the petition for the writ of mandamus. Having heard oral arguments and having examined

all the relevant pleadings on file herein, this Court hereby conditionally grants the writ of mandamus for the reasons set forth below.

Plaintiff, Donnie Rubin, individually and as representative of the Estate of LaKeisha Rubin, alleges that Defendant Joe Harold Williams, Sr. was driving a wrecker along the south access road of Interstate 10 in Winnie, Texas, on April 1, 1994, when he struck and killed two pedestrians. As a result of that occurrence, Mr. Williams is a defendant, among others, in a wrongful death and survival suit brought on behalf of the survivors and the estates of the two persons killed in the accident.

On October 4, 1994, Plaintiff Donnie Rubin (real party in interest) filed a motion requesting that the court order Williams to submit to an eye examination by an ophthalmologist. At the conclusion of the hearing on the motion, the court granted Rubin's request and ordered that the eye examination take place. Objecting to the court's order on the grounds of abuse of discretion, Relator Williams filed his petition for writ of mandamus herein.

■■■ Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding); *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). A trial court abuses its discretion where it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. *Walker,* 827 S.W.2d at 839. Mandamus is intended to be an extraordinary remedy, available only in limited circumstances. *Walker,* 827 S.W.2d at 840. One of those circumstances for which mandamus is available is the review of an order under TEX.R.CIV.P. 167a. *Amis v. Ashworth,* 802 S.W.2d 374, 377–379 (Tex.App.—Tyler 1990, orig. proceeding) [leave denied]; *Sherwood Lane Associates v. O'Neill,* 782 S.W.2d 942, 945 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding); *Walsh v. Ferguson,* 712 S.W.2d 885 (Tex.App.—Austin 1986, orig. proceeding).

■■■ Mental or physical examinations of parties to a lawsuit are governed by Rule 167a. The two requirements set out by the rule for obtaining an order for an examination are as follows:

1. The mental or physical condition of a party must be in controversy; and
2. Good cause must be shown by the movant for the examination.

Rule 167a has been employed most frequently in Texas courts by defendants seeking a mental examination of plaintiffs in personal injury suits. *Coates v. Whittington,* 758 S.W.2d 749 (Tex.1988); *Crouch v. Gleason,* 875 S.W.2d 738 (Tex.App.—Amarillo 1994, no writ); *Amis,* 802 S.W.2d at 377; *Exxon Corp. v. Starr,* 790 S.W.2d 883 (Tex.App.—Tyler 1990, no writ); *Sherwood Lane Associates,* 782 S.W.2d at 943. The movant's initial burden in a Rule 167a motion is to show that the other party's mental or physical condition is in controversy. *Schlagenhauf v. Holder,* 379 U.S. 104, 118, 85 S.Ct. 234, 242–43, 13 L.Ed.2d 152, 164 (1964); *Coates,* 758 S.W.2d at 751. However, in the circumstance where a defendant is seeking the mental examination of a plaintiff, the defendant usually contends that the plaintiff has put his own mental condition in controversy by the mere pleading of damages for mental anguish. The United States Supreme Court, however, has held to the contrary; mere conclusory pleadings are insufficient. *Schlagenhauf,* 379 U.S. at 118, 85 S.Ct. at 242–43, 13 L.Ed.2d at 164. Following the Supreme Court's direction, Texas courts have consistently held that the plaintiff in a personal injury suit does not put his own mental condition in issue by a routine allegation of mental anguish. To warrant the trial court's granting of defendant's motion for physical examination of a plaintiff who has pled mental anguish, the mental injury involved must be severe and must exceed the common emotional reaction to an injury or loss. *Coates,* 758 S.W.2d at 753; *Exxon Corp.,* 790 S.W.2d at 887.

■■■ In contrast to suits in which defendants seek mental examinations of plaintiffs, the instant case involves a plaintiff in a personal injury suit seeking a physical (specifically an eye) examination of a defendant. In

that situation, a court-ordered examination is warranted only in the event that (1) the defendant himself places the condition into controversy by employing it either in support of, or in defense of, a claim, or (2) the plaintiff *affirmatively* shows that the condition is in controversy. *Spear v. Gayle,* 857 S.W.2d 122, 125–126 (Tex.App.—Houston [1st Dist.] 1993, no writ). *See also Schlagenhauf,* 379 U.S. at 119, 85 S.Ct. at 243, 13 L.Ed.2d at 164. Regardless of which party seeks an examination under Rule 167a, however, courts have demonstrated a reluctance to allow such examinations without a discriminating application by the district court of the limitations prescribed by the rule. *See, e.g., Spear,* 857 S.W.2d at 125–126. To do otherwise would mean that such examinations would be ordered routinely in automobile accident cases. *Schlagenhauf,* 379 U.S. at 121–122, 85 S.Ct. at 244–45, 13 L.Ed.2d at 165.

■ In the instant case, Plaintiff's original petition and the amendments thereto do not, by themselves, place Williams' eyesight into controversy. The pleadings merely recite boiler plate language about "failure to keep proper lookout. . . ." That language is nothing more than mere conclusory pleading and does not *affirmatively* place the eyesight issue into controversy.

■ In his motion for an eye examination, Plaintiff Rubin states that Williams testified in his own deposition that he has a piece of aluminum embedded in his right eye as a result of an accident that occurred when Williams was working on a trailer some two years prior to the wrecker-pedestrian accident. It is Rubin's contention that the eye injury described by Williams caused significant vision impairment and that, as a result, William's ability to perceive and visualize Oran Wheaton and LaKeisha Rubin (the decedents herein) as they walked down the service road is at issue. Plaintiff's motion further avers that defendant in his deposition stated that, without corrective lenses, the vision in his right eye is only 45 percent. Yet Plaintiff offers no evidence—no affidavit, no deposition excerpts—to support the statements in his motion. In a Rule 167a motion, there must be evidence in the record to support the allegations contained therein. *Walsh,* 712 S.W.2d at 887. A medical or mental examination is only to be ordered upon a showing of adequate proof. *Id.*

Relator's submission of a portion of the record, however, provides the supporting evidence necessary to place the eyesight matter into controversy. Relator Williams attached to his response to Plaintiff's motion for eye examination certain excerpts from Defendant's deposition. In those particular deposition excerpts, Williams testified about the piece of aluminum in his right eye and also about his vision being only 45 percent in that eye without a contact lens in place. Williams further testified in his deposition that he does not know what his eyesight is—whether 20/20, 20/400, or something else. Neither does he have knowledge of the level of vision in his left eye. Although Relator argues to the contrary, the deposition excerpts support Plaintiff's contention in his motion that the adequacy of Williams' eyesight is in controversy. The deposition excerpts are part of the record before this Court, and, regardless of which party submitted the deposition excerpts, the Court may review and consider them. Therefore, by virtue of the contentions in Plaintiff's motion to compel medical examination and by virtue of the deposition excerpts attached to Relator's response to the motion, the issue of Williams' eyesight is demonstrated to be in controversy.

■ To warrant a medical or mental examination under Rule 167a, the movant must also show good cause for the exam. Good cause entails a showing that:

1. an eye examination is *relevant* to issues that are genuinely in controversy in the case;

2. there is a reasonable *nexus* between the condition in controversy and the examination sought;

3. it is not possible to obtain the information sought through some other, *less intrusive, means.*

*See Coates,* 758 S.W.2d at 753; *Amis,* 802 S.W.2d at 377.

■ All of these requirements are met by Rubin. As alleged in Plaintiff's motion, Williams' ability to perceive and visualize

Oran Wheaton and LaKeisha Rubin is at issue and is relevant in this case as to the effect of the prior injury on Williams' eyesight and his ability to see the two pedestrians as they walked along the road. In other words, Plaintiff is entitled to have Relator's eyes examined to determine whether or not Relator suffers from a vision problem which may have caused or contributed to the accident. Plaintiff further shows that there is a reasonable nexus between the eyesight issue and the specific examination sought; indeed, the nexus between an eye problem and an eye examination is self-evident. Furthermore, no less intrusive means of determining Williams' eyesight is available. As Plaintiff alleged in his motion and at the hearing on the motion, the eye injury occurred two years prior to the truck-pedestrian accident and the latest eye examination on Williams occurred a year prior to the accident; thus, it was within the trial court's discretion to conclude that the records of those matters would not be adequate to determine the state of Williams' vision at the time of the accident. Rubin demonstrates that a current eye examination is necessary; no less intrusive method than an eye examination is available to determine the adequacy of Williams' eyesight. Good cause, therefore, exists for the trial court to order an eye examination.

■ It is true that Rule 167a has most commonly been applied to plaintiffs in personal injury suits when the plaintiff has placed his own mental or physical condition into controversy. However, there is nothing in the rule which limits its application to plaintiffs. Rule 167a specifically applies to "a party," or "a person in the custody, conservatorship or under the legal control of a party...." As recognized by the United States Supreme Court in *Schlagenhauf,* the rule regarding medical or physical examinations applies to both plaintiffs and defendants. "Discovery is not a one-way proposition." *Schlagenhauf,* 379 U.S. at 113, 85 S.Ct. at 240, 13 L.Ed.2d at 161.

Based on the record before him, the trial judge did not abuse his discretion in granting the motion for eye examination. The facts and the law in the case are not such as to require the trial court to deny the motion.

Moreover, the trial court correctly analyzed and applied Rule 167a and the case law construing it. The decision it reached was not arbitrary and unreasonable such as to amount to clear and prejudicial error.

Our ruling in this mandamus proceeding should not be interpreted to mean that eye examinations are warranted in every, or even most, accident suits. Such is not the case. Following the analysis in *Schlagenhauf* and *Coates,* we conclude that a routine allegation such as "failure to keep a proper lookout" does not place a party's eyesight into issue. Indeed, such a pleading is similar to the conclusory pleading of "mental anguish," which *Coates* has expressly declared to be insufficient to warrant a mental examination under Rule 167a.

■ Texas courts have held that severe mental injury or, as stated in *Coates,* more than the common emotional reaction to an injury, is required to place a party's mental condition in controversy. *Coates,* 758 S.W.2d at 753. Similarly, in those cases in which a party requests an eye examination, that party must allege more than inadequate eyesight or simple myopia or astigmatism in order to put another party's vision in controversy; there must be a history of significant vision impairment or eye injury to warrant an eye examination under Rule 167a.

In the instant case, a history of significant eye injury is present. Relator's 1992 injury in which a piece of aluminum struck his eye, and remains lodged within it, is an injury of such proportions that it puts Williams' eye condition into controversy and warrants an examination under Rule 167a.

■ Although the trial court did not abuse its discretion in granting the motion for eye examination, the order signed by the court is fatally deficient, because it fails to meet the specificity requirements of Rule 167a. The order merely recites that "Defendant, Joe Harold Williams, [shall] submit to an independent eye examination by an ophthalmologist." Since the order does not specify the "time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made," as required by Rule 167a, the court abused its

discretion in issuing it. *Amis*, 802 S.W.2d at 379.

The petition for a writ of mandamus is, in part, conditionally granted. It will issue only if Respondent Judge Sanderson fails to vacate his previous order and issue a new order granting the motion for eye examination and specifying "the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."