In re **KIMBERLY–CLARK CORPORATION, The Texas Company Building, L.P., Housing Horizons, L.L.C., and TCB Gen Par, L.L.C., Relators.**

No. 05–07–00501–CV.

Court of Appeals of Texas, Dallas.

July 2, 2007.

Debra Janece McComas, Anne M. Johnson, Victor D. Vital, Haynes and Boone, L.L.P., Dallas, for relators.

Lawrence J. Friedman, Friedman & Feiger, L.L.P., Christopher H. Rentzel, Bracewell & Giuliani LLP, Dallas, Richard Dwayne Danner, Irving, for real parties in interest.

Before Justices WHITTINGTON, LANG, and MAZZANT.

## OPINION

Opinion by Justice LANG.

Kimberly–Clark Corporation, The Texas Company Building, L.P., Housing Horizons, L.L.C., and TCB Gen Par, L.L.C. (Kimberly–Clark), relators, seek a writ of mandamus ordering the Honorable Carl Ginsberg, Judge, 193rd Judicial District Court, Dallas County, Texas to vacate his "Order Concerning Entry Onto Land and Testing/Inspection Pursuant to Tex.R. Civ. P. 196.7." Ashkenazy & Agus Ventures, L.L.C., real party in interest, is the plain-

tiff in the underlying lawsuit. Kimberly–Clark's petition for a writ of mandamus is conditionally granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Since 2002, Kimberly–Clark has owned a registered historical building known as the "Texaco Company Building" in downtown Houston, Texas. In August 2006, Kimberly–Clark and Ashkenazy & Agus signed a contract for the purchase and sale of the property for $18.8 million. Section 6 of the contract contains a clause that establishes the sale of the property is "as-is" and section 9(A)(15) of the contract states Kimberly–Clark has no actual knowledge of the presence or existence of any hazardous substance on or under the land. Also, the contract contained detailed disclaimers, waivers, and releases relating to environmental conditions with a review period that prohibited invasive testing without Kimberly–Clark's consent. The contract also required Kimberly–Clark to provide Ashkenazy & Agus with copies of all environmental records, reports, and testing. On August 18, 2006, Kimberly–Clark sent Ashkenazy & Agus a January 1999 Phase II Environmental Site Assessment Report and an April 12, 2001, Phase I Environmental Site Assessment. The Phase I report disclosed the existence of two sets of underground storage tanks.

On October 18, 2006, Kimberly–Clark and Ashkenazy & Agus executed a reinstated and amended agreement that explicitly stated the review period had expired. However, in February 2007, Ashkenazy & Agus sent inspectors to the property unannounced. Ashkenazy & Agus claimed its lender demanded the environmental inspections after discovering the underground storage tanks. Kimberly–Clark refused to allow the environmental inspection because the re-

view period expired. The parties agreed to extend the closing date to permit Ashkenazy & Agus to resolve any issues with its lender. However, Ashkenazy & Agus did not deposit the additional escrow money required by the agreement so Kimberly–Clark maintains the closing date remained February 28, 2007.

On February 27, 2007, Ashkenazy & Agus sued: (1) Kimberly–Clark and Chicago Title for common law fraud, statutory fraud in a real estate transaction, and negligent misrepresentation; (2) Kimberly–Clark for breach of contract and deceptive trade practices; and (3) Chicago Title for negligence and breach of fiduciary duty. Ashkenazy & Agus sought a declaratory judgment that it was entitled to conduct soil testing on the area adjacent to the underground storage tanks or, in alternative, that if it elects to terminate the agreement within fifteen days of receiving the soil test results, it is terminating for good cause. Also, Ashkenazy & Agus sought a temporary restraining order and injunctive relief. On February 27, 2007, the trial court entered a temporary restraining order that prohibited: (1) Chicago Title from releasing to Kimberly–Clark any earnest monies; and (2) Kimberly–Clark from selling the building to a third-party. On April 6, 2007, Ashkenazy & Agus filed its first amended petition adding: (1) a claim for fraud by non-disclosure against Kimberly–Clark and Chicago Title; and (2) Dwayne Danner, counsel for Chicago Title, as a party.

On April 13, 2007, Ashkenazy & Agus filed a request for inspection to conduct Phase II environmental testing on the property pursuant to Texas Rule of Civil Procedure 196.7. Also, on April 13, 2007, Ashkenazy & Agus filed an emergency motion to compel Kimberly–Clark to allow Ashkenazy & Agus's expert entry onto the property for the purpose of conducting

Phase II environmental testing. On April 20, 2007, Kimberly–Clark filed its response to the motion to compel as well as a motion requesting a protective order prohibiting any invasive environmental testing on the property. After a hearing, the trial court granted Ashkenazy & Agus's motion to compel inspection and denied Kimberly–Clark's motion for protection. The trial court ordered Kimberly–Clark to permit Ashkenazy & Agus's designated agents to enter the premises and conduct Phase II environmental testing. Also, the trial court ordered the agents conducting the test to forward the results of the Phase II environmental testing directly to the trial court and not to disclose the results to anyone, including the parties and their counsel. The trial court's order also stated the trial court intended to conduct an *in camera* inspection of the test results and to notify counsel "the results thereof." The order stated that any violation of the terms of the order shall be punishable by contempt.

Kimberly–Clark filed a petition for a writ of mandamus and an emergency motion for temporary relief. On May 1, 2007, this Court granted Kimberly–Clark's motion and stayed the trial court's order that allowed Ashkenazy & Agus to enter onto Kimberly–Clark's property for the purpose of conducting Phase II environmental testing.

## II. STANDARD FOR MANDAMUS

■ Traditionally, mandamus will not issue unless: (1) the trial court has committed a clear abuse of discretion; and (2) there is no adequate remedy by appeal. *In re Mo. Pac. R.R. Co.,* 998 S.W.2d 212, 215 (Tex.1999) (orig. proceeding) (citing *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding)); *In re Tex. Am. Express, Inc.,* 190 S.W.3d 720, 723 (Tex.App.-Dallas 2005, orig. proceeding).

### A. Abuse of Discretion

■ A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.,* 164 S.W.3d 379, 382 (Tex.2005) (orig. proceeding); *In re Tex. Am. Express,* 190 S.W.3d at 723. In determining whether the trial court abused its discretion in the resolution of factual matters, the court of appeals may not substitute its judgment for that of the trial court and may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *In re Sanders,* 153 S.W.3d 54, 56 (Tex.2004) (orig. proceeding); *In re Tex. Am. Express,* 190 S.W.3d at 724. A trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker,* 827 S.W.2d at 840; *In re Tex. Am. Express,* 190 S.W.3d at 724. Accordingly, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. *Walker,* 827 S.W.2d at 840; *In re Tex. Am. Express,* 190 S.W.3d at 724. If the trial court did not abuse its discretion, it is error for the court of appeals to grant mandamus relief. *In re Sanders,* 153 S.W.3d at 56; *In re Tex. Am. Express,* 190 S.W.3d at 724.

### B. No Adequate Remedy by Appeal

■ The second requirement for mandamus relief, that the petitioner has no adequate remedy by appeal, "has no comprehensive definition." *See In re Ford Motor Co.,* 165 S.W.3d 315, 317 (Tex.2005) (orig. proceeding) (citing *In re Prudential,* 148 S.W.3d 124, 136 (Tex.2004) (orig. proceeding)); *In re Tex. Am. Express,* 190 S.W.3d at 724. Determining whether a

party has an adequate remedy by appeal requires a "careful balance of jurisprudential considerations" that "implicate both public and private interests." *See In re Ford Motor Co.*, 165 S.W.3d at 317; *In re Tex. Am. Express*, 190 S.W.3d at 724. "When the benefits [of mandamus review] outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate." *In re Ford Motor Co.*, 165 S.W.3d at 317; *In re Tex. Am. Express*, 190 S.W.3d at 724. An appeal is inadequate when the parties are in danger of permanently losing substantial rights. *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 211 (Tex.2004) (orig. proceeding); *In re Tex. Am. Express*, 190 S.W.3d at 724. Such a danger arises when the appellate court would not be able to cure the error, the party's ability to present a viable claim or defense is vitiated, or the error cannot be made part of the appellate record. *In re Van Waters*, 145 S.W.3d at 211; *In re Tex. Am. Express*, 190 S.W.3d at 724.

## III. ORDER COMPELLING PHASE II ENVIRONMENTAL TESTING

Kimberly–Clark argues the trial court abused its discretion when it: (1) ordered Kimberly–Clark to permit Ashkenazy & Agus's designated agents to enter the premises and conduct Phase II environmental testing; and (2) ordered the agents conducting the test to forward the results of the Phase II environmental testing directly to the trial court and not to disclose the results to anyone, including the parties and their counsel. Kimberly–Clark contends the trial court abused its discretion and it has no adequate remedy by appeal for three reasons: (1) the Phase II environmental testing does not meet the requirements of Texas Rule of Civil Procedure 196.7; (2) the Phase II environmental testing exceeds the purpose of discovery; and (3) the *in camera* inspection does not

protect Kimberly–Clark from the burdens and risks it claims are created by the Phase II environmental testing.

### A. Scope and Relevance of Discovery Under Texas Rule of Civil Procedure 196.7

First, we address Kimberly–Clark's contention that the Phase II environmental testing does not meet the requirements of Texas Rule of Civil Procedure 196.7. Kimberly–Clark argues the trial court abused its discretion because the Phase II testing ordered by the trial court cannot lead to relevant admissible evidence in support of Ashkenazy & Agus's claims. Also, Kimberly–Clark argues the Phase II environmental testing poses a real risk of immediate irreparable harm and it has no adequate remedy by appeal because if the testing uncovers contaminants, it will be subjected to a number of regulatory obligations such as reporting, investigation, and remediation, irrespective of whether it had anything to do with the contamination.

Ashkenazy & Agus respond that the trial court did not abuse its discretion because an inspection of the property is necessary to prove the existence of environmental contaminants on the property, which is the only way to prove Kimberly–Clark had knowledge of a defect on the property. Also, Ashkenazy & Agus respond that the Phase II environmental testing does not pose a risk of immediate irreparable harm to Kimberly–Clark because: (1) the burden or expense of the inspection does not outweigh its likely benefit because the information is critical to Ashkenazy & Agus's case; (2) the amount in controversy is at least $18.8 million; (3) both parties are sophisticated and experienced entities; and (4) it has agreed to pay for the tests.

### 1. Applicable Law

Texas Rule of Civil Procedure 196.7 governs discovery that involves entering onto the land or property of another party to inspect, measure, survey, photograph, test, or sample the property or any designated object or operation. Tex.R. Civ. P. 196.7; *In re SWEPI L.P.*, 103 S.W.3d 578, 583 (Tex.App.-San Antonio 2003, orig. proceeding).[1] While there is sparse Texas precedent interpreting Texas Rule of Civil Procedure 196.7, Federal Rule of Civil Procedure 34, which is similar to rule 196.7, has been addressed by the federal courts. *Cf. Gillett v. Conner*, 132 Wash. App. 818, 133 P.3d 960, 962 (2006) (noting Washington law sparse on rule similar to rule 34, but federal case law addresses issue to greater extent).

▆ Rule 34(a)(2) governs discovery that involves entering onto the land or property of another party in federal cases. Fed.R.Civ.P. 34(a)(2).[2] Federal cases recognize the unique burdens and risks inherent to entry onto land, e.g., confusion and disruption of defendant's business and employees. *See Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 910 (4th Cir. 1978); *see also Gillett*, 133 P.3d at 960. In the context of a discovery request for entry onto land, the court must balance the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection. *See Belcher*, 588 F.2d at 908; *see also Gillett*, 133 P.3d at 963; Wright, Miller & Marcus, 8A Fed. Prac. & Proc.: Civil 2d § 2214 (1994). However, the burden is on the objecting party to satisfy the court that the testing "should not be had." *See* 8A Fed. Prac. & Proc.: Civil 2d § 2214. It has been observed by the federal courts that most cases involving on-site inspections concern a specific object on the premises, which is the subject matter of the action, e.g., a particular machine in a personal injury case or a patent infringement case. *See, e.g., Belcher.*, 588 F.2d at 910; *see also* 7 *Moore's Federal Practice*, § 34.15 (Matthew Bender 3d ed.2007) (rule 34 used to gain entry to manufacturing facilities, schools, state mental health facilities, and ships).

Texas Rule of Civil Procedure 192.3 restricts the scope of discovery to matters that are: (1) not privileged; and (2) rele-

---

1. Rule 196.7 states, in relevant part:

 **196.7 Request or Motion for Entry Upon Property**

 (a) *Request or Motion.* A party may gain entry on designated land or other property to inspect, measure, survey, photograph, test, or sample the property or any designated object or operation thereon by serving—no later than 30 days before the end of any applicable discovery period— (1) a request on all parties if the land or property belongs to a party; [ ]

 (b) *Time, Place, and Other Conditions.* The request for entry upon a party's property ... must state the time, place manner, conditions, and scope of the inspection, and must specifically describe any desired means, manner, and procedure for testing or sampling, and the person or persons by whom the inspection, testing, or sampling is to be made.

 Tex.R. Civ. P. 196.7.

2. Federal Rule of Civil Procedure 34 states, in relevant part:

 **Rule 34. Production of Documents, Electronically Stored Information, and Things and Entry Upon Land for Inspection and Other Purposes**

 (a) **Scope.** Any party may serve on any other party a request ... (2) to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 26(b).

 *Id.*

vant to the subject matter in the pending action. TEX.R. CIV. P. 192.3. Rule 192.3 requires a party to show the relevance of the inspection, testing, and sampling permitted under rule 196.7 to the subject matter of the litigation. *See* TEX.R. CIV. P. 192.3, 196.7; *see also Belcher*, 588 F.2d at 908; FED.R.CIV.P. 26(b)(1). The language of rule 192.3 states clearly that "[i]t is not a ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to discovery of admissible evidence." TEX.R. CIV. P. 192.3(a). Further, rule 196.7 does not permit blanket discovery on a bare skeletal request when confronted with an objection. *See Belcher*, 588 F.2d at 908 (discussing rule 34).

■ The purposes for which a person is permitted entry onto the property of an adversary are limited. *See Amis v. Ashworth*, 802 S.W.2d 374, 376 (Tex.App.-Tyler 1990, orig. proceeding) (discussing former rules 166b(2)(c) and 167); *see also* 7 *Moore's Federal Practice*, § 34.15 (rule 34 limited by broad scope of examination permitted by rule 26(b)). Rule 196.7 does not provide for the creation of new evidence for the purposes of trial presentation. *See Amis*, 802 S.W.2d at 376 (trial court abused its discretion when it compelled plaintiff to permit access to premises so defendant could create dramatic video depicting his version of events); 3 McDonald & Carlson, TEX. CIV. PRAC. 2d, *Production of Physical Evidence* § 15:15 (2000). Because entry onto a party's property may entail greater burdens and risks than general discovery, the trial court should conduct a greater inquiry into the necessity for the inspection, testing, or sampling. *See Belcher*, 588 F.2d at 908 (rejecting application of general relevancy standard to rule 34). Further, Texas Rule of Civil Procedure 192.4 provides that the scope of discovery should be limited by the court if

it determines the discovery sought is obtainable from: (1) a more convenient, less burdensome, or less expensive source; or (2) the burden of the proposed discovery outweighs its likely benefit. *See* TEX.R. CIV. P. 192.4.

■ Generally, the scope of discovery in a particular case is within the trial court's discretion. *In re CSX Corp.*, 124 S.W.3d 149, 152–53 (Tex.2003). However, a trial court abuses its discretion by ordering discovery that exceeds the scope permitted by the rules of procedure. *Id.*

## 2. Application of the Law to the Facts

Ashkenazy & Agus's request for inspection states:

> Please take notice that pursuant to Texas Rule of Civil Procedure 191[sic], Plaintiff Askenazy & Agus Venture, LLC, by and through its environmental consultant, EFI Global, shall be allowed on April 30, 2007 to inspect the property commonly known as the Texaco Company Building ... located at 720 San Jacinto in Harris County, city [sic] of Houston, Texas. This inspection, which shall continue day to day until completed, shall include Phase II soil testing, a description is attached hereto as Exhibit "A."

Ashkenazy & Agus's motion to compel was filed the same day as its request for inspection and before the 30–day period for Kimberly–Clark to respond or object in writing to the request for inspection had expired. *See* TEX.R. CIV. P. 196.7(c) (responding party must serve written response on requesting party within 30 days after service of request). The motion to compel indicates counsel for Kimberly–Clark expressed on the telephone that he would object to any requested testing and

the Phase II environmental testing is needed to prove its claim against Kimberly–Clark for fraud by nondisclosure.[3]

The trial court's order granting the requested discovery states, in part:

[Ashkenazy & Agus's] motion to compel and Kimberly–Clark's motion for protective order] concern [Ashkenazy & Agus's] ability to enter onto the premises made the basis of this suit (i.e. the former Texaco Building located at 720 San Jacinto, Houston, Texas), and conduct Phase II environmental testing.

\* \* \* \* \* \*

It is therefore **ORDERED** that [Kimberly–Clark] permit [Ashkenazy & Agus's] designated agent(s) to enter the premises made the basis of this lawsuit *forthwith* in order to allow said agents to conduct the testing as set forth in Exhibit "A" to this Order. The testing shall not exceed in scope the terms contained in Exhibit "A." [4] All costs of

---

**3.** The motion stated, in part:

7. On April 13, 2007, [Ashkenazy & Agus] served a Texas Rule of Civil Procedure 196 Request for Inspection on the buyer [sic] to conduct Phase II soil testing on the Property. In a telephone conversation, Mr. Vital informed [Ashkenazy & Agus's] counsel that [Kimberly–Clark] would object to any requested testing.

\* \* \* \* \* \*

9. The clear language of Rule 196 of the Texas Rules of Civil Procedure allows [Ashkenazy & Agus] or its representative to request entry onto a property to inspect a property, which is the very subject of the litigation and to take samples and to conduct tests. [Ashkenazy & Agus] has provided a sufficient description of the means, manner, and procedure for the testing and sampling in its notice of inspection.

10. [I]t is critical and absolutely necessary for [Ashkenazy & Agus] to be allowed to complete the requested inspection, testing and sampling of the Property before the injunction hearing because it is [Ashkenazy & Agus's] position that they were fraudulently induced into entering the Agreement of Purchase and Sale when [Kimberly–Clark] did not fully and honestly disclose the environmental hazards and conditions of the Property. [Ashkenazy & Agus] further intend[] to show at the injunction hearing in order to establish that the earnest money should not be delivered to the buyer that [Ashkenazy & Agus] was and is entitled to terminate the deal for cause because [Kimberly–Clark] failed to completely disclose environmental hazards on the Property and to prevent and remediate damage affecting the Property as required by Section 16 of the Agreement.

**4.** Exhibit A states as follows:

**Exhibit "A"**
**(2 pages)**
Former Texaco Building
Scope of Work
720 San Jacinto
Houston, Texas

Due to the potential impact to the surface soils from the on-site historical Underground Storage Tanks (USTs) located in the sub basement neat Rusk Street (FigureSite Plan), EFI Global has proposed the installation and sampling of four soil borings. Information collected during the installation and sampling of these borings will be presented in a letter report format.

The proposed scope of work includes the following activities:

● Prepare a site Health and Safety plan.
● Review available information provided by Ashkenazy & Agus Ventures, LLC to determine the location of the underground utilities and the property boundaries.
● Install four interior soil borings as near as possible to the UST and to a depth of approximately 15 feet below ground surface (bgs).
● Collect continuous soil samples during drilling and field screen the samples for the presence of organic vapors with a photoionization detector (PID).
● Collect two samples from each tank hold boring, as follows: Collect the first sample at the interval with the highest indication of contamination (staining, odors, field instrument reading). If no obvious contamination is present, collect a sample from just above the soil-water interface if water is present; or between the midpoint of the maximum tank diameter and total depth (TD). Collect a second sample at boring TD. If water is encoun-

testing and any damages caused by the testing shall be borne by [Ashkenazy & Agus]. The testing shall be done in the least intrusive means possible.

■■■■■ Our review begins with consideration of the bases for discovery as claimed by Ashkenazy & Agus. In its motion, Ashkenazy & Agus asserts the Phase II environmental testing is "critical and absolutely necessary . . . because it is [Ashkenazy & Agus's] position that they were fraudulently induced into entering the Agreement of Purchase and Sale when [Kimberly–Clark] did not fully and honestly disclose the environmental hazards and conditions of the Property." However, a trial court's inquiry into whether to compel inspection must go beyond mere "relevance" and must balance the need presented by the moving party against the "burdens and dangers created by the inspection." See Belcher, 588 F.2d at 908.

We observe that the Phase II environmental testing sought by Ashkenazy & Agus may have some relevance to its fraud by nondisclosure claim. Nevertheless, allowing Ashkenazy & Agus to conduct Phase II environmental testing will not prove whether or not Kimberly–Clark knew there was environmental contamination of the subject property at the time of the contract.[5] In balancing "relevance" against the "burdens and dangers created by inspection," we note further that Ashkenazy & Agus do not dispute Kimberly–Clark's claim that if the Phase II environmental testing is performed and contamination is discovered, Kimberly–Clark may be subject to rules and regulations relating to the reporting, investigation, and remediation of the contamination.

We conclude, as guided by the rules and case law, an assertion of general relevance is not a sufficient basis for the discovery sought here. See Belcher, 588 F.2d at 908. Certainly, courts are required to limit discovery to prevent undue burdens. See Tex.R. Civ. P. 192.5. Assuming, without deciding, the information sought may have some relevance to Ashkenazy & Agus's claim for fraud by nondisclosure, it has not been demonstrated why other means of discovery would not yield evidence directly relevant to the fraud by nondisclosure claim without imposing the burdens Kimberly–Clark argues will be visited on it. Tex.R. Civ. P. 196.7, 192.4. On this record, we agree with Kimberly–Clark that the trial court's order compelling Phase II en-

tered, at least one well or other sampling point must be installed, developed, purged, and sampled. The soil samples will be analyzed for Benzene, Toluene Ethylbenzene and Xylenes (BTEXs) and MTBE using EPA Method 8021, Total Petroleum Hydrocarbons (TPH) by Texas method 1005 and if required one sample will be analyzed for polycyclic aromatic hydrocarbons (PAHs) using EPA Method 8270C.
- If groundwater is encountered in the borings, install a 1″ diameter PVC monitoring well at the boring location.
- The well will be developed prior to sampling. All development water will be placed into 55–gallon drums for on-site storage pending disposal.
- If groundwater is encountered, the groundwater sample collected will be an-

alyzed for BTEX using EPA Method 8021, TPH using TX Method 1005 and if required one groundwater sample will be analyzed for PAH's [sic] using EPA Method 8270C. Laboratory-supplied sample bottles are filled directly from the well pump effluent tubing.
- Quality assurance samples will consist of one laboratory-prepared trip blank in each cooler containing BTEX sample bottles that travel to and from the site.
- All development water, purged water and soil cuttings will be containerized on-site for future disposal.
[page 2 depicting a diagram of the property is omitted].

5. The testing ordered in Exhibit A of the trial court's order is extensive. See footnote 4 for the scope of the testing ordered.

vironmental testing does not meet the requirements of Texas Rule of Civil Procedure 196.7. On this record and at this point in time, we can see no reason why Ashkenazy & Agus should not engage in normal methods of discovery, such as depositions and document production, to address the legal issues that bear on Kimberly–Clark's potential liability for fraud by nondisclosure. *See id.* at 910.

### B. Proposed Discovery and Ultimate Relief Requested

Second, we address Kimberly–Clark's contention that the Phase II environmental testing exceeds the purpose of discovery. Kimberly–Clark argues the trial court abused its discretion because the trial court's order permits Ashkenazy & Agus to circumvent its burden of proof on the merits by obtaining a summary disposition of its declaratory judgment claim and denies Kimberly–Clark its right to a trial. Ashkenazy & Agus respond that the trial court did not abuse its discretion because it was entitled to Phase II environmental testing under the terms of the contract.

### 1. Applicable Law

■■■ The nature and purpose of the discovery process is the administration of justice by allowing the parties to obtain the fullest knowledge of the issues and facts prior to trial. *West v. Solito,* 563 S.W.2d 240, 243 (Tex.1978) (orig. proceeding); 3 McDonald & Carlson, TEX. CIV. PRAC. 2d, *Nature and Purpose of Discovery* § 12:2 (2000); *see also* 27 C.J.S. *Discovery* § 2(b) (1999). The ultimate purpose of discovery is to seek the truth so that disputes may be decided by what the facts reveal, not by what is concealed. *Jampole v. Touchy,* 673 S.W.2d 569, 573 (Tex.1984) (orig. proceeding), *overruled on other grounds, Walker,* 827 S.W.2d 833;

*see also Pearson Corp. v. Wichita Falls Boys Club Alumni Ass'n,* 633 S.W.2d 684, 686 (Tex.App.-Fort Worth 1982, no writ) (purpose of discovery rules is to facilitate trial process, narrow issues in dispute, and change trial from game of chance and surprise to orderly process of uncovering actual facts); 3 McDonald & Carlson, TEX. CIV. PRAC. 2d, § 12:2; 27 C.J.S. § 2(b). Discovery should be used to augment and facilitate the trial process by narrowing as much as possible the actual issues in dispute. *See* 3 McDonald & Carlson, TEX. CIV. PRAC. 2d, § 12:2. However, a trial court abuses its discretion if it grants an order compelling discovery that allows a party to receive through discovery the relief sought in the main suit. *See generally Uvalde Rock Asphalt Co. v. Loughridge,* 425 S.W.2d 818, 820–21 (Tex.1968) (orig. proceeding) (trial judge abused discretion in denying company's request for jury trial on issue of proper purpose for inspection of corporate records and granting shareholders' motion for discovery; company was entitled to mandamus relief because shareholders would receive, through trial court's order, discovery of all relief sought in main suit); *In re Dyer Custom Installation, Inc.,* 133 S.W.3d 878, 883 (Tex.App.-Dallas 2004, orig. proceeding) (trial judge abused discretion in ordering production of requested documents without holding jury trial on issue of proper purpose for inspection of corporate records and corporation had no adequate remedy at law because all issue for trial would be moot).

Allowing discovery that provides a party the relief sought in the main suit severely compromises or vitiates the other party's ability to present his claim or defense during a trial because the issue would be moot. *See generally In re Dyer,* 133 S.W.3d at 883. As a result, there is no adequate remedy by appeal because requiring the party subject to the order compelling discovery to wait until after the

trial on the merits before pursuing his complaint that the trial court's order denied him a trial would cause him to lose the remedy he seeks. *See generally id.*

## 2. Application of the Law to the Facts

 Ashkenazy & Agus's first amended original petition seeks a declaratory judgment as follows:

120. Pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, [Ashkenazy & Agus] respectfully request that the Court issue a declaratory judgment that provides: (1) that [Ashkenazy & Agus] did not breach its obligations under the agreement; (2) that [Kimberly–Clark] has breached its obligation under the agreement; (3) **that [Ashkenazy & Agus] is entitled to conduct the soil testing on the area adjacent to the underground storage tanks on the property;** and (4) that [Ashkenazy & Agus] is entitled to specific performance of [Kimberly–Clark's] obligations in the Agreement, if [Ashkenazy & Agus] notifies [Kimberly–Clark] within fifteen (15) days of receiving the soil tests from EFI that it is seeking specific performance of [Kimberly–Clark's] obligations under the Agreement.

(emphasis added).

The information sought by Ashkenazy & Agus in its request for inspection is the very relief requested in its declaratory judgment action, i.e., to conduct Phase II environmental testing on the area adjacent to the underground storage tanks. It is clear the trial court's order compelling Phase II environmental testing has granted Ashkenazy & Agus the relief requested in its declaratory judgment action. As a result, the trial court's order severely com-

promises or vitiates Kimberly–Clark's ability to present its defense to the declaratory judgment action during a trial because the trial court's order permits Ashkenazy & Agus to circumvent its burden of proof in the declaratory judgment action by obtaining the relief sought through discovery, making Kimberly–Clark's defense moot. *See generally Uvalde*, 425 S.W.2d at 820–21; *In re Dyer*, 133 S.W.3d at 883. Further, requiring Kimberly–Clark to wait until after the Phase II environmental testing and the trial on the merits before pursuing its complaint that the trial court's order to compel denies its right to a trial would cause Kimberly–Clark to lose the remedy it seeks, i.e., a trial on Ashkenazy & Agus's declaratory judgment action.[6] *See In re Dyer*, 133 S.W.3d at 883. We agree with Kimberly–Clark that the trial court's order compelling Phase II environmental testing exceeds the purpose of discovery.

### C. In Camera Inspection

Third, we address Kimberly–Clark's contention that the *in camera* inspection does not protect it from the burdens and risks it claims will be created by the Phase II environmental testing. Kimberly–Clark argues the trial court abused its discretion and it has no adequate remedy by appeal because if the Phase II environmental testing uncovers contaminants: (1) Kimberly–Clark will be subjected to a number of regulatory obligations such as reporting, investigation, and remediation despite the fact that the trial court's order prohibits counsel from telling their clients the results of the Phase II environmental testing because counsel's knowledge is imputed to her clients; and (2) the value of the property will be significantly and unfairly re-

---

**6.** This conclusion should not be construed as a review of the merits of Ashkenazy & Agus's declaratory judgment action.

duced because Kimberly–Clark will be obligated to disclose that information to any potential buyers. Further, Kimberly–Clark claims Ashkenazy & Agus wants to conduct the Phase II environmental testing because the threat of the testing and its attendant risks gives Ashkenazy & Agus bargaining power to force Kimberly–Clark to sell the property for a lower the price.

Ashkenazy & Agus respond that the trial court did not abuse its discretion because an *in camera* inspection is adequate to protect Kimberly–Clark. Also, Ashkenazy & Agus respond that the Phase II environmental testing does not pose a risk of immediate irreparable harm to Kimberly–Clark because the results of the Phase II environmental testing will most likely result is a settlement of the parties' dispute.

### 1. Applicable Law

■■■ The Texas Rules of Civil Procedure give a trial court the discretion to conduct an *in camera* review of some or all of the disputed material sought to be discovered. *See* Tex.R. Civ. P. 193.4(a), 199.6. Generally, a trial court conducts an *in camera* inspection to determine if a document should be protected from discovery. *See In re E.I. DuPont de Nemours & Co.,* 136 S.W.3d 218, 223 (Tex.2004) (orig. proceeding) (discussing claim of privilege). The trial court must conduct the *in camera* inspection of the disputed documents before deciding to compel the production of those documents. *See id.* However, when the basis for an objection resisting discovery is undue burden, it is not necessary for the trial court to conduct an *in camera* inspection and review of the particular discovery before ruling on the objection. *See* 3 McDonald & Carlson, § 12:61(g).

### 2. Application of the Law to the Facts

■■■ The trial court's order granting Ashkenazy & Agus's motion to compel states, in part:

It is further **ORDERED** that the results of said testing shall not be disclosed to *anyone,* (including the Parties, or the Parties' Counsel) other than the Court. The agents conducting the tests shall forward the results of the tests directly to the Court, and not to the Parties, their Counsel, or anyone else. Once the Court has received the test results, it intends to notify Counsel that it will conduct an *in camera* inspection of the test results, and notify Counsel the results thereof. Lead Counsel for [Ashkenazy & Agus] is hereby **ORDERED** to deliver a copy of this Order to any such agents who shall perform such tests, such that said agents will be aware of the contents of this Order. Any violation of any terms of this Order, by Counsel, the parties, or the agents taking the tests **SHALL** be punishable by contempt.

(emphasis in orig.).

Typically, *in camera* review allows a trial court to review information while maintaining nondisclosure and determine the merits of claims regarding whether the information should be protected from discovery. However, here, the order identifies no reason for *in camera* inspection. Although Ashkenazy & Agus appear to assume it will be able to use the results of the Phase II environmental testing as proof of its fraud by nondisclosure claim and for the purpose of inducing a settlement, the order does not allow use of the test results for any purpose in the litigation. The order simply states the trial court will inspect the test results and then states that the trial court "intends to notify Counsel the results thereof." Assuming, without deciding, the somewhat unclear

language of the order provides that the trial court will "notify" counsel of the test results, the order certainly does not allow any use of the test results in the litigation. As a result, there appears to be no purpose for the order compelling the Phase II environmental testing.[7] Further, the burdens and risks discussed by Kimberly–Clark, which Ashkenazy & Agus do not dispute, are not vitiated by the secrecy described in the order. We agree with Kimberly–Clark that the trial court's *in camera* inspection of the test results provides no protection from the shortcomings of the trial court's order compelling Phase II environmental testing, which are described above.

## IV. CONCLUSION

For the reasons set out above, we conclude the trial court abused its discretion when it ordered Kimberly–Clark to permit Ashkenazy & Agus's designated agents to enter the premises and conduct Phase II environmental testing. Also, we conclude Kimberly–Clark has no adequate remedy by appeal. Kimberly–Clark's petition for a writ of mandamus is conditionally granted.

The trial court is ordered to dissolve its April 26, 2007, "Order Concerning Entry Onto Land and Testing/Inspection Pursuant to Tex.R. Civ. P. 196.7." The writ of mandamus will issue only if the trial court fails to comply with this Court's opinion and order.

This Court's May 1, 2007 order granting Kimberly–Clark's request for emergency relief and staying the trial court's April 26, 2007 order allowing Ashkenazy & Agus to enter onto Kimberly–Clark's property for the purpose of conducting Phase II environmental testing remains in effect until the trial court complies with the order conditionally granting mandamus relief or the writ of mandamus issues.

---

7. This statement must not be construed to mean the Court is stating the Phase II environmental testing results should be used in this litigation. This Court expressly makes no such statement or conclusion.