**CONDITIONALLY GRANT; and Opinion Filed August 6, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00529-CV

### IN RE THE GOODYEAR TIRE & RUBBER COMPANY, Relator

**Original Proceeding from the 95th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-07666**

## OPINION

Before Justices Moseley, Fillmore, and Evans
Opinion by Justice Fillmore

Relator, Goodyear Tire & Rubber Company (Goodyear), filed this petition for writ of mandamus challenging the trial court's order requiring Goodyear to grant plaintiffs' counsel, expert witness, and videographer access to its plant in North Carolina to demonstrate and videotape the manufacture of two types of tires. We conditionally grant relief.

### FACTUAL AND PROCEDURAL CONTEXT

This mandamus proceeding arises in a wrongful death case following an automobile accident the plaintiffs contend was caused by a defective tire manufactured by Goodyear. The plaintiffs maintain that Goodyear was grossly negligent with respect to its tire manufacturing practices at its Fayetteville, North Carolina plant at the time the tire was produced and that the design of the tire was defective because it failed to include a nylon cap ply, which the plaintiffs contend is a safer design. The tire that is the subject of this lawsuit was a P265/75R16 114S Kelly Safari Trex SL OWL manufactured in March 2007.

The plaintiffs initially sought a four-hour tour of large sections of the plant, but subsequently limited their request. The plaintiffs explained that instead of being allowed to tour and videotape any part of the plant where any component of the tire at issue had been processed, they wished to view and record the operation of only the "first stage" and "second stage" tire manufacturing machines "because those are the two machines that were used to build our tire." They stated that if the actual machine used to manufacture the tire at issue was not available for this purpose, they would agree to view "a substantially similar tire building machine." They further explained that they believed anomalies their tire expert had identified in the tire at issue "were caused by the person or equipment that was involved in that process" and that they hoped to use their recording of the tire manufacturing demonstration to "try to prove the correlation between what was going on in the plant when our tire was made and why it failed later on due to these defects." They also requested to view the manufacture of a nylon cap ply tire because it is one of the designs that the plaintiffs consider safer. The plaintiffs contend this demonstration will allow them to "prove the extreme simplicity of adding this cost-efficient safety component to the tire."

The trial court ordered Goodyear to allow plaintiff's counsel, expert witness, and videographer to enter the facility where the tire was manufactured for a period of one hour to document the manufacturing process. According to the trial court's order:

> The inspection may only include the inspection, photography and videography of the tire building machines used to place the inner liner on the tire building drum and to assemble the 1st and 2nd steel belts into the pre-cured tire (sometimes referred to as the first and second stage tire building machines) on which the subject tire was manufactured, or in the alternative, inspection of the most similar tire building machines to be identified by Goodyear at the time of the inspection, if the specific tire building machines on which the subject . . . tire . . . manufactured in the 12th week of 2007, cannot be identified;

The trial court's order divided the demonstration into two thirty-minute segments. During the first segment, Goodyear was required to permit observation and recording of a "tire building machine that manufactures tires of the same size as the subject tire with a nylon overlay or 'cap ply.'" During the second segment, Goodyear was required to permit observation and recording of a "tire building machine that manufactures tires of the same size as the subject tire without a nylon overlay or 'cap ply.'"

The undisputed[1] affidavit evidence before the trial court established that two months after the tire at issue was manufactured, Goodyear changed the design of the tire, and the equipment that had been used to manufacture the tire had been removed from the plant. As of the date of the hearing before the trial court, one such machine had been returned to the plant, but it was being used to manufacture a different size tire. The affidavit evidence also established that no tire of the same size as the subject tire, whether with or without a nylon cap ply, is currently manufactured on the type of machine that produced the subject tire.

**APPROPRIATENESS OF MANDAMUS REVIEW**

*Standard for Granting Mandamus Relief*

Mandamus is an extraordinary remedy that is available only in limited circumstances. *CSR Ltd. v. Link,* 925 S.W.2d 591, 596 (Tex. 1996) (orig. proceeding) (citing *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)). "Mandamus is appropriate 'only to

---

[1] The plaintiffs argue that they objected to one of Goodyear's affidavits. At the hearing on the motion for entry onto land, the plaintiffs argued that the affidavit "fail[ed] to elaborate on two key points," regarding media access to the plant and changes in equipment at the plant. The plaintiffs did not, however, object to the affidavit and the trial court did not rule on any purported objection. Accordingly, the plaintiffs waived any objection they had to the affidavit. TEX. R. APP. P. 33.1. Moreover, the plaintiffs did not attempt to offer contrary evidence other than counsel's suggestion that "I think that this particular tire building machine may still be in there, and I want to go look at it. And until they prove otherwise, I think we can assume that that's what I want to go see."

At a subsequent hearing, Goodyear provided additional affidavit evidence as follows:

> Sometime after May 7, 2007, Goodyear removed from service all BBR-2 machines at the Fayetteville plant. Recently, one of the BBR-2 machines was returned to operation at the Fayetteville plant. The tire that is currently being constructed on the BBR-2 is not built to either the same specification as the Subject Tire or the Subsequent Specification. Indeed, among other things, it is neither the same size nor aspect ratio as tires built to either specification. Furthermore, Goodyear cannot confirm this machine was used to construct the Tire at Issue.

correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law.'" *Id.* (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding))*.* To obtain mandamus relief, a relator must show both that the trial court has clearly abused its discretion and that relator has no adequate appellate remedy. *In re Prudential Ins. Co.,* 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker,* 827 S.W.2d at 839.

### *Adequacy of Appellate Remedy*

We turn first to the question of whether appeal is an adequate remedy when a trial court erroneously allows discovery that should not be permitted under rule 196.7. What constitutes an adequate remedy on appeal has no comprehensive definition. *See In re Ford Motor Co.,* 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (per curiam) (citing *In re Prudential,* 148 S.W.3d at 136). Determining whether a party has an adequate remedy by appeal requires a "careful balance of jurisprudential considerations" that "implicate both public and private interests." *See id.* (quoting *In re Prudential,* 148 S.W.3d at 136). "When the benefits [of mandamus review] outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate." *Id.* (quoting *In re Prudential,* 148 S.W.3d at 136). An appeal is inadequate when the parties are in danger of permanently losing substantial rights. *In re Van Waters & Rogers, Inc.,* 145 S.W.3d 203, 211 (Tex. 2004) (orig. proceeding) (per curiam). "Such a danger arises when the appellate court would not be able to cure the error, when the party's ability to present a viable claim or defense is vitiated, or when the error cannot be made part of the appellate record." *Id*. For this reason, mandamus relief is available when the trial court compels production beyond the permissible bounds of discovery. *See In re Weekley Homes, L.P.,* 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding). Thus, we must address the appropriate contours of discovery in cases involving requests for entry onto the property of another.

–4–

**STANDARDS FOR ALLOWING ENTRY ONTO PROPERTY OF ANOTHER**

*Standard of Review*

The scope of discovery largely rests within the discretion of the trial court. *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex. 1985) (orig. proceeding). "[T]he ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed." *In re Colonial Pipeline Co.,* 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding) (per curiam) (quoting *Jampole v. Touchy,* 673 S.W.2d 569, 573 (Tex. 1984) (orig. proceeding)).

In considering whether a trial court has clearly abused its discretion with regard to a discovery order, the reviewing court may not substitute its judgment for that of the trial court and the relator must establish that the trial court could reasonably have reached only one decision. *Walker*, 827 S.W.2d at 839–40. "Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *Id.* at 840. When a trial judge exercising an otherwise discretionary authority has only one course to follow and one way to decide, however, the discretion vested in the court is for all practical purposes destroyed. *Jones v. Strayhorn*, 321 S.W.2d 290, 295 (Tex. 1959); *U.S. Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 671 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding).

*Requirements for Granting Entry onto Property Under Rule 196.7*

Texas Rule of Civil Procedure 196.7 governs discovery that involves entering onto the land or property of another party to inspect, measure, survey, photograph, test, or sample the property or any designated object or operation. TEX. R. CIV. P. 196.7; *In re SWEPI L.P.,* 103 S.W.3d 578, 583 (Tex. App.—San Antonio 2003, orig. proceeding). Rule 196.7 "does not permit blanket discovery on a skeletal request when confronted with an objection." *In re*

*Kimberly-Clark Corp.,* 228 S.W.3d 480, 487 (Tex. App.—Dallas 2007, orig. proceeding). Because Texas precedent interpreting rule 196.7 is relatively sparse, this Court has previously relied on precedent under federal rule 34 to inform its decision. *Id.*

The purposes for which a person is permitted entry onto the property of an adversary are limited. *Id.* at 487. Although a request for entry upon land must satisfy the general requirement of relevance, mere relevance is not sufficient to justify a request for entry upon the property of another. *See id.; Belcher v. Bassett Furniture Indus., Inc.,* 588 F.2d 904, 908 (4th Cir. 1978) (rejecting the contention that the requests for entry onto land are governed by the general relevance standard). Discovery involving entry onto the property of another involves unique burdens and risks including, among other things, confusion and disruption of the defendant's business and employees. *In re Kimberly-Clark Corp.,* 228 S.W.3d at 486 (citing *Belcher,* 588 F.2d at 910). Thus, the trial court should conduct a "greater inquiry into the necessity for the inspection, testing, or sampling." *Id.* at 487. In conducting such an inquiry, the court must balance the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection. *Id.* at 486.

The plaintiffs argue generally that the demonstration of the tire manufacturing process permitted by the trial court will enable the plaintiffs to show "how the sloppy tire manufacturing process resulted in the defects presented in the tire." It is the plaintiffs' theory that the tire was defectively manufactured, allegedly because of the dilapidated condition of the plant, because the tire manufacturing equipment was not working properly, and because Goodyear's employees were not properly trained and were often "not sober." They argue that because tire production is a partially automated and partially manual process, "it is unrealistic to expect the jury to fully understand how drug impairment of the tire builder will lead to the sort of steel belt misplacement and splicing errors noted in the failed tire at issue without seeing the process" and

that "[d]ocumentation of the tire building process is the critical link between the conditions at the plant, the defects observable in the failed tire, and the tire builders' training that such defects were known by Goodyear to result in tread separations." They conclude that "[a]ccess to these tire building processes is essential to showing the jury how the types of conduct described by the eyewitnesses resulted in the types of defects visible in the tire" and question how they can "show the link between a drug-impaired, overly rushed, or otherwise careless tire builder's substandard job performance and the defects in the failed tire if the family is denied access to the tire building process." The plaintiffs also argue that the demonstration will enable the plaintiffs to show the "extreme simplicity" of adding a nylon overlay to the tire, which they argue would have prevented the tread separation.[2]

The plaintiffs' explanation of the materiality of the recording shows that the video is intended for demonstrative purposes. *See* 36 TEX. JUR. 3D *Evidence* § 462 (2010) ("'Real' evidence should be used to refer to evidence directly involved in the incident giving rise to the litigation, while 'demonstrative' should be reserved for evidence offered for purposes of illustration."). Rule 196.7 does not provide for the creation of new evidence for demonstrative purposes. *In re Kimberly-Clark Corp.,* 228 S.W.3d at 487. As the Tyler Court of Appeals has explained:

> The term "discovery" suggests the existence of the information being sought. The various rules governing the discovery process in Texas show that the process is intended for the gathering of relevant information within the control or knowledge of others. There is nothing in the rules that suggests that the "discovery" process is intended to provide for the "creation" of new evidence for the purpose of trial presentation.

*Amis v. Ashworth,* 802 S.W.2d 374, 376 (Tex. App.—Tyler 1990, orig. proceeding [leave denied]) (footnote omitted). In *Amis* the plaintiff sought entry onto the defendant's property to

---

[2] Goodyear has conceded that a nylon cap ply design was both technologically and economically feasible in 2007. It does not dispute the ease of installing a nylon cap ply or the expense of doing so. Rather, it disputes whether such a design is safer.

make a videotape recreating the plaintiff's version of the incident giving rise to the lawsuit. Noting that the rules of civil procedure limit "photographing to recording the existing conditions on the property," the court concluded that a property owner has no obligation to "relinquish his property for the creation of evidence designed and staged to portray his opponent's version of the occurrence in its most favorable light." *Id.*

The video the plaintiffs seek to record falls into the category of "new evidence." The demonstration the trial court has ordered does not involve merely inspecting the machine that produced the tire at issue to determine whether the condition of the machine may have caused the production of a defective tire. Instead, it requires Goodyear to provide demonstrations of the manufacture of completely different products with the intention that the plaintiffs will use those demonstrations as a visual aid to illustrate their theories regarding the manner in which the manufacture of the subject tire may have been deficient and how an alternate design that they deem simple and inexpensive could have avoided the accident. The recording the plaintiffs want to make does not attempt to document the process used in making the actual tire at issue in the case nor does it document the condition of the plant at the time that the tire was manufactured. *See In re Kimberley-Clark,* 228 S.W.3d at 489 (noting that proposed environmental testing in 2007 would not prove whether defendant knew of environmental contamination in 2006 when it entered into contract for sale of property). Rather, seven years after the fact, it will document work performed by different workers, using either a different machine or making a different tire, under different conditions. In this respect the trial court's order goes beyond the sort of inspection, measurement, surveying, photographing, testing, or sampling contemplated by rule 196.7.

The recording the plaintiffs seek to create will be a generic representation of tire manufacturing. The plaintiffs have effectively conceded that such a recording would not be

useful, rejecting as inadequate a previously produced tire manufacturing video because "[i]t doesn't tell us whether the tire that's being made is of the same make, model or size as the subject tire. It doesn't tell us whether the tire being made is a passenger tire or a [light] truck tire. It doesn't tell us whether or not the tire that's being made incorporates a nylon cap ply."  Further, the recording the plaintiffs seek to create could be used as a dramatic presentation by the plaintiffs of the poor tire manufacturing processes they contend were rampant at Goodyear's plant at the time the tire was manufactured.  Neither forced participation in the creation of a generic representation of tire manufacturing nor compelled participation in the preparation of a dramatic demonstrative exhibit is consistent with the type of discovery contemplated under the rules of civil procedure.

CONCLUSION

For all of these reasons, we conditionally grant relator's petition for writ of mandamus. A writ will issue only in the event the trial court fails to vacate its April 8, 2014 "Order on Plaintiffs' Motion for Entry Upon Land."

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE

140529F.P05