**Petition for Writ of Mandamus Conditionally Granted and Memorandum Opinion filed November 24, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00578-CV

---

### IN RE MICHELIN NORTH AMERICA, INC., Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**152nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2014-27952**

---

## MEMORANDUM OPINION

Michelin North America, Inc. filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221 (West 2004); *see also* Tex. R. App. P. 52. In the petition, Michelin asks this court to compel the Honorable Robert Schaffer, presiding judge of the 152nd District Court of Harris County, to set aside

his April 21, 2015 order granting the motion to compel access to its tire building machines at its Fort Wayne, Indiana plant in the underlying products liability and negligence suit. We conditionally grant Michelin's petition for writ of mandamus.

## BACKGROUND

On August 24, 2014, Beverly Ann Kilpatrick was driving her 2013 Ford Explorer westbound on Highway 190 in Milam County, Texas. Robert Dwayne Coleman was driving eastbound on Highway 190 in a 2001 Ford F250 pickup truck. Coleman's truck crossed the centerline and hit Kilpatrick's Explorer after the left front tire on Coleman's truck failed. Kilpatrick died at the scene. Robert Coleman and Blayne Cook and Cameron Cook, who were passengers in the truck, were seriously injured.

On October 3, 2014, Kollye Kilpatrick, Individually and as Heir at Law and Representative of the Estate of Beverly Kilpatrick, Eric Kilpatrick, and Karen Kilpatrick (the "Kilpatricks") filed a wrongful death suit. The Kilpatricks alleged negligence and strict products liability claims against Michelin and a negligence claim against Robert Coleman. On December 19, 2014, Coleman, Individually, and Kimberly Coleman, as Next Friend of Blayne Michael Cook and Cameron Baily Cook (the "Colemans"), filed a petition in intervention in the Kilpatrick's suit against Michelin.

The tire involved was an LT265/75R16 BF Goodrich Rugged Terrain T/A LRE, which was manufactured at Michelin's Fort Wayne, Indiana plant during the

2

first week of February 2011.[1]  The Colemans alleged that the tread peeled off the left front tire and the tire suffered rapid air loss due to tread belt separation, causing Coleman's pickup truck to go out of control and cross into oncoming traffic.

Before the Kilpatricks sued, counsel for the Colemans wrote Michelin's counsel: (1) advising that he was investigating a potential claim on behalf of the Colemans; (2) requesting that Michelin preserve evidence, including the tire building machines; and (3) stating that the Colemans should have access to original evidence in Michelin's "possession (such as the tire building and tire inspecting rooms at the Fort Wayne plant and the tire building machines at that plant used to build [the] LT 265/75R16 BF Goodrich Rugged Terrain T/A's in February of 2011 at the  Fort Wayne plant)."  On December 10, 2014, the Colemans' counsel wrote Michelin's counsel again, stating:

> As I mentioned back in September, I wish to inspect (1) the tire inspection room and the final finish tire inspection process at the Ford [sic] Wayne tire plant where the tire was made as well as (2) the tire building machines which were used to assemble the innerliner and the steel belts with their nylon reinforcement into the failed Coleman tire bearing DOT No. BFW802110611.  Please send me a proposed protocol for the inspection of the final finish inspection room, the final finish inspection process, and two tire building machines (the first stage machine used to assemble the innerliner and the second stage machine used to assemble the belt package).

---

[1] Michelin owns the BF Goodrich brand.

The Colemans served Michelin with discovery on December 19, 2014, when they filed their petition in intervention. The Colemans asked to enter Michelin's Fort Wayne plant to "visually inspect and videographically document the tire building machines at the plant" subject to certain protocols and limitations. *See* Tex. R. Civ. P. 196.7. This request was more limited than the Colemans' previous requests, and it set forth a detailed protocol for visually inspecting and videotaping the machines for one hour while in use.

Alternatively, the Colemans asked to observe the most similar tire building machines if the specific tire building machines on which the subject tire was built could not be identified. If Michelin refused to allow entry upon land as requested under Rule 196.7, then the Colemans asked in the alternative that Michelin videotape the same machines and same processes without Robert Coleman or his representative being present, and file such videotapes under seal with the trial court.

Michelin objected to the Colemans' request for entry upon land; it claimed a trade secret privilege and asserted that the requested inspection is overly broad, would impose an undue burden, is not relevant, is not reasonably calculated to lead to the discovery of admissible evidence, and is a "fishing expedition." In response, the Colemans filed a motion to compel access to the two tire building machines for observation pursuant to Rule 196.7. Michelin filed a motion for protective order and a response to the Colemans' motion to compel. Relying on the affidavit testimony of Brian Peirano, who had been employed at the Fort Wayne plant since August 2006, Michelin asserted that an inspection of the tire building machines in

4

2015 would not reveal the conditions of the machines in 2011 because they had been modified after the subject tire had been manufactured.

On March 16, 2015, the trial court held a hearing on the Colemans' motion to compel. The trial court signed an order on April 21, 2015, in which it granted the Colemans' motion to compel access to the two tire building machines at Michelin's plant in Fort Wayne. The order states, in relevant part:

> Claimants shall be provided only one hour of limited access to particular tire building machines at Michelin's Fort Wayne, Indiana facility . . . . Claimants' representatives allowed to attend the observation are limited to Claimants' attorneys, Claimants' tire failure experts, and a videographer selected by Claimants' counsel, and all such Claimants' representatives shall be subject to Michelin's proposed method of ensuring confidentiality provided that the Claimants' counsel and their experts have the videos for use in this case. Each side will bear its own costs.

> Observation and videotaping of the machines is limited to one hour. The observation will include the machines used to place the innerliner on the tire building drum and to assemble the belts and nylon reinforcement into the pre-cured tire (sometimes referred to as first and second stage tire building machines) on which LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 at Michelin's Fort Wayne plant. The access will include visually observing and videotaping the machines while they are in use building light truck tires, and the scope of the observation should not include any sampling or testing or measurements and should include nothing more than observation and videotaping. The hour will include (a) 15 minutes of observation of the first stage tire building process conducted in a manner as near as is practical to the first stage tire building processes implemented in building LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the

5

6th week of 2011 at Michelin's Fort Wayne plant, (b) 15 minutes of observation of the second stage tire building process conducted in a manner as near as practical to the second stage tire building processes implemented in building LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were [sic] built in the 6th week of 2011 at Michelin's Fort Wayne plant, (c) 15 minutes of observation of the second stage tire building process where a jointless nylon strip spirally wound over the belts in at least two layers and covering a greater portion of the belt package as compared to the portion of the belt package covered by nylon in the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 is [sic] being applied to a light truck tire [as] similar as practical to LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 at Michelin's Fort Wayne plant, and (d) 15 minutes of observation of the second stage tire building process where Filament at Zero is being applied to a light truck tire as similar as practical to a [sic] LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were [sic] built in the 6th week of 2011. The videotaping will occur while these machines are in normal use.

Claimants' attorneys, Claimants' experts, and the videographer shall identify themselves before the observation, shall wear visitor badges the entire time they are observing the machines (if Michelin requests), shall be accompanied and escorted by Michelin's personnel at all times (if Michelin requests), shall wear hardhats and safety glasses and ear protection and steel toed boots (if Michelin requests), shall not interrupt or interfere with the equipment or the normal operations of the machines or employees, and shall not attempt to speak with any personnel except for their escorts. Claimants' attorneys, Claimants' experts, and the videographer shall not be allowed to videotape any machines or processes other than those set forth in this order and shall not bring to the observation recording or videotaping devices other than the videographer's equipment.

6

Michelin may take whatever steps it deems appropriate to limit access so that access only includes access to the particular machines and processes to be videotaped as set out above. . . .

In this mandamus proceeding, Michelin claims the trial court abused its discretion by compelling Michelin to permit the Colemans access to the tire building machines used to manufacture the subject tire.

## STANDARD OF REVIEW

To be entitled to mandamus relief, a relator must demonstrate (1) the trial court clearly abused its discretion; and (2) the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). The party resisting discovery bears the heavy burden of establishing an abuse of discretion and an inadequate remedy by appeal. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding) (per curiam). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). A discovery order that compels production beyond the rules of civil procedure is an abuse of discretion. *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding) (per curiam).

The adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). Because this balance depends

heavily on circumstances, it must be guided by analysis of principles rather than simple rules that treat cases as categories. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). In evaluating benefits and detriments, we consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). We also consider whether mandamus will "allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments." *Id.* Finally, we consider whether mandamus will spare the litigants and the public "the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *Id.* An appeal is not adequate if the discovery error could not be cured on appeal. *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding) (per curiam).

## ANALYSIS

Rule 196.7 governs discovery involving the entry onto land or property of another party to inspect, measure, survey, photograph, test, or sample the property or any designated object or operation. *In re Kimberly-Clark Corp.*, 228 S.W.3d 480, 486 (Tex. App.—Dallas 2007, orig. proceeding). Rule 196.7 provides, in relevant part:

> (a) *Request or Motion.* A party may gain entry on designated land or other property to inspect, measure, survey, photograph, test, or sample the property or any designated object or operation thereon . . . .

*   *   *

8

(d) *Requirements for Order for Entry on Nonparty's Property.* An order for entry on a nonparty's property may issue only for good cause shown and **only if the land, property, or object thereon as to which discovery is sought is relevant to the subject matter of the action**.

Tex. R. Civ. P. 196.7(a), (d) (emphasis added).

Information is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action or defense more or less probable than it would be without such information. Tex. R. Evid. 401. A party's requests must show a reasonable expectation of obtaining information that will aid in the resolution of the dispute. *CSX Corp.*, 124 S.W.3d at 152. Therefore, discovery requests must be reasonably tailored to include only matters relevant to the case. *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (per curiam); *see also* Tex. R. Civ. P. 192 cmt. 1 ("While the scope of discovery is quite broad, it is nevertheless confined by the subject matter of the case and reasonable expectations of obtaining information that will aid resolution of the dispute."). The Texas Supreme Court has repeatedly admonished that discovery may not be used as a fishing expedition. *In re Ford Motor Co.*, 427 S.W.3d 396, 397 (Tex. 2014) (orig. proceeding) (per curiam); *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180−81 (Tex. 1999). The trial court may limit discovery if (1) the "discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;" or (2) the burden outweighs the benefit of obtaining discovery. Tex. R. Civ. P. 192.4.

9

Because Texas precedent interpreting Rule 196.7 is "sparse," one court of appeals looked to federal law regarding requests for entry onto land. *See In re Goodyear Tire & Rubber Co.*, 437 S.W.3d 923, 928 (Tex. App.—Dallas 2014, orig. proceeding) (citing *Kimberly-Clark Corp.*, 228 S.W.3d at 486). Federal Rule of Civil Procedure 34(a)(2) "permit[s] entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2). Because entry onto premises may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection is required than just the general relevancy standard. *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978). Instead, "the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection." *Id.*

Although a request for entry onto land must satisfy the general requirement of relevance, "mere relevance is not sufficient to justify a request for entry upon the property of another" under Rule 196.7. *Goodyear Tire & Rubber Co.*, 437 S.W.3d at 298. Entry onto the property of another for discovery purposes includes risks of confusion and disruption of the defendant's business and employees. *Id.* Therefore, the determination of whether entry onto land should be compelled must balance the need presented by the party seeking entry against the burdens and dangers created by the inspection. *Kimberly-Clark Corp.*, 228 S.W.3d at 489 (citing *Belcher*, 588 F.2d at 908).

10

The Dallas Court of Appeals considered similar facts in a case involving a request for entry onto land. *Goodyear Tire & Rubber Co.* involved a wrongful death action in which the plaintiff alleged that a fatal automobile accident was caused by a defective tire manufactured by Goodyear. 437 S.W.3d at 925. The plaintiff requested to view and record the first stage and second stage tire building machines used to build the tire at issue. *Id.* The trial court ordered Goodyear to allow the plaintiff's counsel, expert witness, and videographer to enter the North Carolina facility for one hour to document the manufacturing process. *Id.* at 926.

The demonstration ordered by the trial court in *Goodyear Tire & Rubber Co.* involved more than inspecting the machine that produced the tire to determine whether the condition of the machine caused the production of a defective tire. *Id.* Instead, the trial court required "Goodyear to provide demonstrations of the manufacture of completely different products with the intention that the plaintiffs will use those demonstrations as a visual aid to illustrate their theories regarding the manner in which the manufacture of the subject tire may have been deficient and how an alternate design that they deem simple and inexpensive could have avoided the accident." *Id.* The recording would not document the process used in making the actual tire at issue or the condition of the plant at the time the tire was manufactured. *Id.* Instead, seven years after the tire was made, the recording would document work performed by different workers, using either a different machine or making a different tire, under different conditions. *Id.* For these reasons, the trial court's order went beyond the type of inspection, measurement, surveying, photographing, testing, or sampling contemplated by Rule 196.7. *Id.*

11

The analysis from *Goodyear Tire & Rubber Co.* applies with equal force to the present case. Michelin submitted the affidavit of Brian Peirano, who had been employed at Michelin's Fort Wayne plant since August 2006, in support of its response to the Colemans' motion to compel.[2] Peirano's affidavit established that the two tire building machines used to make the subject tire have been "modified substantially since 2011 to provide the capability to fabricate larger, more complex tires." Moreover, "the tire building machines, as well as the processes for which the machines are used, are very different today than when the Subject Tire was manufactured." There is no factual dispute on this record that the first and second stage tire building machines are currently producing different tires than those manufactured in 2011.

The relevance of the actions required of Michelin under the order is not apparent on this record because observing the first and second stage tire building machines in use today will not reflect the manner in which the subject tire was built on those machines. *See id.* at 929 (holding the recording that the plaintiffs wanted to make would not document the process used in making the actual tire at issue or the condition of the plant at the time the tire was manufactured seven years previously, but would only document work performed by different workers, using

---

[2] The Colemans objected to Peirano's affidavit in the trial court on grounds that it failed to show personal knowledge. The mandamus record does not reflect that they obtained a ruling on this objection, and the Colemans do not state in the record where they obtained a ruling. "[A] litigant must object and obtain a ruling from the trial court to preserve a complaint that an affidavit fails to reveal the basis for the affiant's personal knowledge of the facts stated therein." *Washington DC Party Shuttle, LLC v. IGuide Tours, LLC*, 406 S.W.3d 723, 736 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (en banc). Therefore, we do not consider the Colemans' contention that Peirano's affidavit fails to show personal knowledge. *See id.*

either a different machine or making a different tire, under different conditions, going beyond what was contemplated by Rule 196.7); *see also Murphy v. Cooper Tire & Rubber Co.*, No. 5:08cv40/RS/EMT, 2008 WL 3926715, at \*3 (N.D. Fla. Aug. 21, 2008) (holding that the information the plaintiffs sought by a Rule 34 inspection was not relevant because the subject tire had been manufactured more than seven years earlier, Cooper Tire no longer manufacture the tire at the Findlay, Ohio plant, and the plant did not reflect the manufacturing conditions and processes that existed in 2001).

Moreover, allowing the videographing of the two tire building machines would disrupt operations at Michelin's Fort Wayne plant. Peirano stated in his affidavit that the subject machines are located in the tire building area, which is in the center of the plant. Michelin would need to hang drapes to conceal everything other than the two machines to be inspected. The presence of the drapes will disrupt the flow of product to surrounding machines because certain aisle ways would have to be shut down.

Peirano further testified that it is also likely that a total of twelve machines, including the two machines for which inspection is requested, will be required to become idle. Michelin would have to restart the two machines for inspection and ensure that there is enough material in the machines to restart them and run them for the specified amount of time. Product to build the tires will not be delivered via the main aisle in the area during the inspection.

Peirano further explained that a manager will be taken away from his usual responsibilities in order to accompany the Colemans, their expert, photographer,

13

and videographer the entire time they are in the plant. The estimated cost of the labor and materials to hang the drapes is $2,000. As a result of having to shut down a number of machines in preparing for and during the inspection, Michelin will also lose the production of 1,000 tires and tens of thousands of dollars. The burden of the inspection imposed on Michelin outweighs any benefits to the Colemans that could be derived from the inspection.

## CONCLUSION

We conclude that (1) the trial court abused its discretion by ordering Michelin to allow the Colemans access to the two subject tire machines at its Fort Wayne plant; and (2) the error cannot be cured by appeal. *See Goodyear Tire & Rubber Co.*, 437 S.W.3d at 927(holding no adequate remedy by appeal exists in a Rule 196.7 case when the court compels production beyond the permissible bounds of discovery). Accordingly, we conditionally grant Michelin's petition for writ of mandamus and order the trial court to vacate its April 21, 2015 order granting the motion to compel access to Michelin's tire building machines at its Fort Wayne plant. The writ will issue only if the trial court fails to act in accordance with this opinion.[3]

/s/    William J. Boyce
Justice

---

[3] Because we have decided this proceeding on the issue of relevance under Rule 196.7, we need not address Michelin's assertion that the information requested in the inspection is a trade secret.

14

Panel consists of Justices Boyce, McCally, and Donovan.