

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00590-CV

**IN RE THE GOODYEAR TIRE & RUBBER CO**

Original Mandamus Proceeding[1]

Opinion by: Karen Angelini, Justice
Dissenting Opinion by: Luz Elena D. Chapa, Justice

Sitting: Karen Angelini, Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: April 26, 2017

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

Relator, The Goodyear Tire and Rubber Company, filed this petition for writ of mandamus challenging a discovery order granting real parties in interest[2] access to a Goodyear facility to observe and record tire manufacturing machines in operation. Relator also filed a motion for temporary stay of the enforcement of the discovery order during the pendency of this mandamus proceeding. This court granted the stay and requested a response. We conditionally grant the petition for writ of mandamus.

---

[1] This proceeding arises out of Cause No. 13-06-12009-DCVAJA, styled *Elvia Munoz, et al., v. The Goodyear Tire & Rubber Co, et al.*, pending in the 365th Judicial District Court, Dimmit County, Texas, the Honorable Amado J. Abascal, III presiding.

[2] The real parties in interest are Elvia Munoz, individually as surviving spouse and on behalf of the Estate of Ramiro Munoz, Jr., deceased, Ramiro Munoz, III, and Amanda Munoz. For purposes of this opinion, they will be referred to as "the Plaintiffs."

**BACKGROUND**

This proceeding arises out of a traffic accident in Dimmit County, Texas, which occurred on June 11, 2013, when a cement truck collided with a vehicle driven by Ramiro Munoz, resulting in Munoz's death. The Plaintiffs contend the collision was a result of a catastrophic failure of the left front tire on the cement truck, a "385/65R22.5 Goodyear G286" manufactured by Goodyear in 2009 in a tire plant in Danville, Virginia using an "RTN" tire manufacturing machine. The Plaintiffs filed suit against Goodyear and the company that owned and operated the cement truck.

On May 12, 2015, the Plaintiffs propounded discovery on Goodyear. Included in the discovery was the request for production at issue in this mandamus proceeding:

REQUEST FOR PRODUCTION NO. 6:

Please produce the tire building machines used to place the innerliner and steel belts into precured 385/65R22.5 G286 tires made at Goodyear's Danville, Virginia plant from April 9 to May 9 of 2009 (if the tire building machines requested are no longer available, please produce the machines as similar as is practicable to the machines requested).

Goodyear objected to this request for production on the grounds that it was vague, overbroad, not reasonably calculated to lead to the discovery of admissible evidence, was actually a request for entry into the Goodyear plant and thus subject to a greater level of scrutiny than a request for production, was a fishing expedition, was unduly burdensome, and sought "information which is a trade secret, confidential, or of some other highly-sensitive commercial or proprietary nature."

On October 23, 2015, the Plaintiffs filed a motion to compel production of the tire building machines as part of a response to a motion to compel discovery filed by Goodyear. According to the Plaintiffs' motion, the production of the tire building machines would involve entering the Danville tire plant, observing the manufacturing process and videotaping the process. Goodyear

filed a response to the motion to compel on November 3, 2015. Goodyear supported its response with the declaration of Monroe Griffith, a manager at Goodyear's Danville plant.

In his declaration, Griffith stated he had been employed by Goodyear as a "Q-Tech Manager since 2012." According to the declaration, Goodyear stopped producing the subject tire in 2010. In addition, the plant underwent significant changes since the subject tire was built, with new equipment added and existing equipment modified or removed. There had also been turnover in personnel. Further, none of the tires being constructed on RTN machines at the plant were being built to the same specifications as the subject tire.

According to the Griffith declaration, Goodyear designed the RTN machines used to manufacture the subject tire and the machines were built to Goodyear specifications. In addition, people seeking access to the RTN machines would have to pass near other processes and equipment and see details of the tire building process unrelated to the subject tire. Goodyear developed the "designs, manufacturing processes and quality systems . . . at great expense," does not make them publicly available, and they "are maintained in confidence by Goodyear." Griffith testified the designs, manufacturing processes and quality systems "cost millions of dollars to develop." According to Griffith, Goodyear limits access to the tire plant and takes steps to prevent dissemination of information regarding tire manufacturing operations. Visitors to the plant are required to "sign nondisclosure agreements prohibiting disclosure of any proprietary, trade secret information they may encounter while in the plant." Employees must agree not to disclose information without prior authorization, and access to the computer system is controlled with user identification numbers and passwords. Employees are given confidential material only on a "need-to-know basis."

In his declaration, Griffith discussed the burden of setting up the RTN machines to produce the tires responsive to the discovery order, which include the resulting loss of production, the need

to assign personnel to ensure the safety of the inspection team, and the need to involve the union under Goodyear's collective bargaining agreement with its employees.

The Plaintiffs' motion to compel was heard on November 4, 2015. At the conclusion of the hearing the trial judge stated that he was granting the Plaintiffs' request "as represented to the Court at this hearing, not necessarily as reflected in the written motion[.]" On December 2, 2015, the trial court signed an "Order on Motion to Compel Production of Tire Building Machines Subject to Limitations and Confidentiality." The order required Goodyear allow plaintiffs' expert, "one counsel," and a videographer access to the RTN tire machines while in operation. The order further allowed the visual observation and videotaping by plaintiffs' videographer of: (1) the normal operation of the RTN machines that were used to manufacture the tire involved in the lawsuit while in operation, or if those machines no longer exist or cannot be identified, a machine as similar as practical, while those machines are in use during the first- and second-stages of the tire building process; (2) an RTN machine in operation manufacturing a similar tire to the one involved in this litigation "that is nearest as is practical to the alternative design that is proposed by the Plaintiffs with respect to the wider No. 4 belt;" and (3) an RTN machine in operation manufacturing a similar tire to the one involved in this litigation "that is nearest as is practical to the alternative design that is proposed by the Plaintiffs with respect to the thicker undertread design." The order specified all videotape be turned over to Goodyear to maintain and further specified Goodyear would not be required to produce the tapes unless ordered to do so by the trial court following an in-camera inspection.

Goodyear filed a motion for reconsideration on December 15, 2015. The trial court heard the motion to reconsider on January 28, 2016, but signed no order. The trial court held another hearing on August 31, 2016, after which the trial court signed an order denying Goodyear's motion for reconsideration. Goodyear then filed this mandamus proceeding.

## STANDARD OF REVIEW

Mandamus will issue only to correct a clear abuse of discretion for which the relator has no adequate remedy at law. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). "Mandamus relief is available when the trial court compels production beyond the permissible bounds of discovery." *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding). There is no adequate appellate remedy if an appellate court would be unable to cure the trial court's discovery error. *Id.*; *In re Goodyear Tire & Rubber Co.*, 437 S.W.3d 923, 927 (Tex. App.—Dallas 2014, orig. proceeding). Therefore, if the discovery ordered in this case compels production outside the permissible bounds of discovery, which cannot be corrected on appeal, then mandamus relief is appropriate.

## ANALYSIS

The Plaintiffs argue their discovery request was a request for production. Goodyear argues the request was actually a request for entry on property. Although the Plaintiff's initial request was designated a request for production of the machines used to place the innerliner and steel belts into the subject tire, in their motion to compel they sought entry onto Goodyear's property to observe and videotape operations at the tire manufacturing plant.

Requests for production and requests for entry onto property serve different functions and are subject to different standards. A request for production allows for inspection, sampling, testing, photographing and copying "documents or tangible things within the scope of discovery." TEX. R. CIV. P. 196.1(a). In contrast, a request for entry onto property allows a party to "gain entry on designated land or other property to inspect, measure, survey, photograph, test, or sample the property or any designated object or *operation* thereon." TEX. R. CIV. P. 196.7(a) (emphasis added). In this case, the Plaintiffs sought entry onto property to observe and videotape operations

thereon. This is, therefore, a request for entry upon property, not a request for production, and is thus governed by Texas Rule of Civil Procedure 196.7. *See In re SWEPI L.P.*, 103 S.W.3d 578, 583 (Tex. App.—San Antonio 2003 orig. proceeding) ("Texas Rule of Civil Procedure 196.7 governs discovery which must be made by entering onto the land of another to inspect, measure, survey, photograph, test or sample the property or any designated object or operation thereon.").

A party seeking entry onto property bears the burden of showing more than "mere relevance." *In re Goodyear*, 137 S.W.3d at 928. "Discovery involving entry onto the property of another involves unique burdens and risks including, among other things, confusion and disruption of the defendant's business and employees." *Id.* "Thus, the trial court should conduct a 'greater inquiry into the necessity for the inspection, testing, or sampling.'" *Id.*, (citing *In re Kimberly–Clark Corp.*, 228 S.W.3d 480, 486 (Tex. App.—Dallas 2007, orig proceeding). Two courts in Texas have addressed the application of Rule 196.7 in circumstances very similar to those now before this court: *In re Michelin*, No. 14-15-00578-CV, 2015 WL 7456101 (Tex. App.—Houston [14th Dist.], Nov. 24, 2015, orig. proceeding) (mem. op.) and *In re Goodyear Tire & Rubber Co.*, 437 S.W.3d 923.

*In re Goodyear* involved a wrongful death lawsuit in which the plaintiffs alleged a tire defectively designed and manufactured by Goodyear failed and caused a wreck. *In re Goodyear*, 437 S.W.3d at 925. The plaintiffs sought to view and record the operation of the "first stage" and "second stage" tire manufacturing machines because those machines were used to build the subject tire. *Id.* at 926. If the actual machine used to manufacture the tire at issue was not available, plaintiffs proposed they view a tire building machine that was "substantially similar" to the actual machine. *Id.* The plaintiffs sought the videotaping of the tire manufacturing demonstration to prove why the subject tire failed and that the failure was due to defects caused by the allegedly defective manufacture of the subject tire. *Id.* at 925–26. As in the case now before this court, the

plaintiffs in *In re Goodyear* also requested to view and videotape the manufacture of tires that represented alternate designs the plaintiffs contended were safer than the subject tire. *Id*. at 926.

The trial court in *In re Goodyear* issued an order requiring the inspection and videotaping of the first and second stage tire building machines on which the subject tire was manufactured, or, alternatively, the most similar tire building machines identified by Goodyear if the exact machines could not be identified. *Id.* The tire building demonstration ordered by the trial court required Goodyear to manufacture tires that were different from the subject tire. *Id*.

The Fifth District Court of Appeals noted the evidence was undisputed the design of the tire had changed after the subject tire was manufactured, the machines used to manufacture the subject tire had been removed, and although one machine had been returned to the plant, it was being used to manufacture a different tire. *Id.* The evidence further "established that no tire of the same size as the subject tire [was] currently manufactured on the type of machine that produced the subject tire." *Id*.

The court concluded the video sought by the plaintiffs fell "into the category of 'new evidence.'" *Id*. at 929. Rather than requiring the inspection of the machine that produced the subject tire, the discovery order required Goodyear demonstrate "the manufacture of completely different products with the intention that the plaintiffs will use those demonstrations as a visual aid to illustrate their theories regarding the manner in which the manufacture of the subject tire may have been deficient and how an alternate design that they deem simple and inexpensive could have avoided the accident." *Id*. The video would not document the process used in making the subject tire or the condition of the plant at the time the subject tire was manufactured. *Id*. Instead, the video would "document work performed by different workers, using either a different machine or making a different tire, under different conditions." *Id*. Thus, the appellate court held, the trial court's order went "beyond the sort of inspection, measurement, surveying, photographing, testing,

or sampling contemplated by [Texas Rule of Civil Procedure] 196.7." *Id.*  The appellate court concluded "[n]either forced participation in the creation of a generic representation of tire manufacturing nor compelled participation in the preparation of a dramatic demonstrative exhibit is consistent with the type of discovery contemplated under the rules of civil procedure," and conditionally granted mandamus.  *Id*. at 930.

*In re Goodyear* was followed by the Fourteenth Court of Appeals in *In re Michelin*.  As in the *Goodyear* case and the case now before this court, *Michelin* involved allegations of an accident caused by a defective tire with the plaintiffs seeking access to a tire manufacturing facility to view and record the manufacturing machines in operation.  *In re Michelin*, 2015 WL 7456101 at *1–2. The trial court ordered the plaintiffs' attorneys, tire failure experts and a videographer be given access to tire building machines at a Michelin tire plant to observe and videotape "particular tire building machines."  *Id*. at *2–3.  The order required the  processes to be observed and recorded be "conducted in a manner as near as is practical" to the processes used in manufacturing the allegedly defective tire.  *Id.* at *2.  The tires to be constructed included tires different from the subject tire.  *Id*.

The Fourteenth Court of Appeals began its analysis by stating that discovery requests must "be reasonably tailored to include only matters relevant to the case," but further noted that, although a request for entry onto land must satisfy the general requirement of relevance, "'mere relevance is not sufficient to justify a request for entry upon the property of another under Rule 196.7.'"  *Id*. at *4.  A trial court must "balance the need presented by the party seeking entry against the burdens and dangers created by the inspection."  *Id*.

The Fourteenth Court held the discovery ordered was not relevant because observing the tire building machines would not "reflect the manner in which the subject tire was built on those machines."  *Id*. at *5.  The court also pointed out the disruption of operations at the Michelin plant

that would result from the entry onto the property. *Id*. at *6. The Fourteenth Court concluded the trial court had abused its discretion, there was no adequate remedy on appeal, and conditionally granted the mandamus.

In the case now before this court, the Plaintiffs argue *Goodyear* is distinguishable because the plaintiffs in *Goodyear* specifically sought the inspection to develop demonstrative evidence. In the instant case, the Plaintiffs contend they are seeking "real evidence" because the order involves the RTN machine that produced the subject tire. We disagree: the order in the instant case provides for the observation of the machines used to manufacture the subject tire or "one nearest as is practical." Further, the order in the current case requires the manufacture of types of tires not at issue in this lawsuit, as did the order in *In re Goodyear*.

The Plaintiffs also argue the current case differs from the *Goodyear* case because the plaintiffs in *Goodyear* did not object to the defendant's affidavits, whereas the Plaintiffs here claim they "objected extensively, obtained express rulings, and offered abundant contrary evidence" in response to the Griffith declaration attached to Goodyear's response to the Plaintiffs' motion to compel. The record does not support the Plaintiffs' claim. At the November 4 hearing, the Plaintiffs' counsel stated the Griffith declaration "is a totally conclusory affidavit, by the way. It does not explain anything in detail. It's an objectionable conclusory affidavit." However, insofar as this was an objection to the declaration, the Plaintiffs did not obtain a ruling regarding the alleged conclusory nature of the declaration. Further, the Plaintiffs made no objection at the November 4 hearing regarding the timeliness of the Griffith declaration.

The Plaintiffs argue that the trial court implicitly granted a timeliness objection by stating in the December 2, 2015 order that the court had "considered the motion, timely evidence, responses, arguments, and objections." However, the Plaintiffs did not raise a timeliness objection at the November 4 hearing and nothing stated by the trial judge at that hearing indicated he was

making an evidentiary ruling excluding the Griffith declaration from consideration. Therefore, the Griffith declaration was before the trial court when it ruled upon the Plaintiffs' motion.

We find the reasoning of the *In re Goodyear* and *In re Michelin* cases applicable to the case now before this court. The Plaintiffs seek entry onto Goodyear's property to create a recording that does not "document the process used in making the actual tire at issue in the case nor does it document the condition of the plant at the time that the tire was manufactured." *In re Goodyear*, 437 S.W.3d at 929. Rather, the inspection and recording ordered will take place eight years after the subject tire was manufactured, will observe and record work performed by different workers, using different or modified machines, manufacturing different tires, under different conditions. *See id*. The discovery order requires the creation of evidence, not the discovery of existing, relevant evidence and goes beyond the scope of discovery as contemplated by Texas Rule of Civil Procedure 196.7. The burden was on the Plaintiffs to establish that the relevance of the evidence sought outweighed the burden caused by an entry onto property, and this the Plaintiffs failed to do. The trial court abused its discretion by granting the Plaintiffs' motion to compel and no appellate remedy will cure the error. Under these circumstances, mandamus relief is proper.

## CONCLUSION

For the reasons set out above, we conditionally grant the relator's petition for writ of mandamus. The writ will issue only if the trial court fails to vacate its "Order on Motion to Compel Production of Tire Building Machines Subject to Limitations and Confidentiality" signed on December 2, 2015 and its August 31, 2016 order requiring Goodyear to comply with the December 2, 2015 order.

Karen Angelini, Justice